# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00838-CV

### In re Jeffrey (Tre) Krueger

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

Relator Jeffrey (Tre) Krueger was found in contempt of court for violating a temporary injunction and was committed to jail for 125 days. During his confinement, Krueger filed a petition for writ of habeas corpus and an emergency motion to set bond pending this Court's determination of the merits of the petition. We granted the emergency motion, ordered Krueger released upon the posting of bond, and requested a response from the real parties in interest, Michael Torres and Cru Energy, Inc. (Cru Energy). A response was subsequently filed. Having considered the petition and response, we conclude that Krueger is entitled to relief. Accordingly, we will grant the petition for writ of habeas corpus.

## BACKGROUND

Krueger and Torres are opposing parties in ongoing litigation involving Cru Energy, a company that they co-founded. In the underlying suit, Krueger sued Torres for breach of fiduciary duty, fraud, conversion, and other theories of recovery. Torres filed an answer and counterclaim in which he made similar allegations against Krueger. During the course of the litigation, Torres

sought and obtained a temporary restraining order and two temporary injunctions against Krueger. The temporary restraining order, which was entered on June 14, 2011, and extended by agreement on July 27, 2011, prohibited Krueger from, among other things, "making or initiating any withdrawals or transfers from the Wells Fargo Account (as defined in Plaintiffs' Original Petition), excluding transfers to be made in the ordinary course of business of Cru Energy."[1] The first temporary injunction, which was entered on July 5, 2011, and replaced the temporary restraining order, prohibited Krueger from:

(1)     scheduling or providing notice of or conducting a shareholder's meeting;

---

[1] The "Wells Fargo Account" is described in Krueger's petition as follows:

> The Board authorized a checking/banking account for CRU Energy with Wells Fargo Bank (the "Wells Fargo Account"). The Board resolution authorizing the Wells Fargo Account provides that Mr. Krueger and Mr. Torres would both be authorized signatories on the Wells Fargo Account.

Although no identifying account number was provided in the petition, the "Wells Fargo Account" was referenced multiple times in the petition and formed the basis for Krueger's conversion theory against Torres. Krueger pled,

> On or about October 1, 2010, Mr. Krueger attempted to electronically access the Wells Fargo Account. Mr. Krueger was able to view the Wells Fargo Account, but was unable to conduct any transactions in it. When Mr. Krueger asked Mr. Torres about his inability to access the Wells Fargo Account, he informed Mr. Krueger that he had Mr. Krueger's signature authority on the Wells Fargo Account revoked. Mr. Torres said that he believed having too many persons with access to the Wells Fargo Account was not consistent with how he wanted to handle CRU Energy's accounting functions.

2

(2) making or initiating any withdrawals or transfers from any of Cru Energy, Inc. bank accounts, including, but not limited to, the Wells Fargo Account as defined in Plaintiffs' Original Petition;

(3) disposing of, selling or encumbering the shares or any assets of Cru Energy, Inc. to which Jeffrey Krueger claims ownership;

(4) removing, destroying, or otherwise making unavailable any written information or documents related to the activities of any of Cru Energy, Inc.'s employees, agents, contractors, prospective or actual investors, customers or governmental agencies and its employees, or any other person who may be directly or indirectly involved with the affairs or business of Cru Energy, Inc.;

(5) contacting any of Cru Energy Inc.'s investors or potential investors, or any other persons doing business with or potentially a participant in the business of Cru Energy, Inc., except as specifically authorized by Michael Torres.

The second temporary injunction, which was entered on July 15, 2011 and purports to supplement the first temporary injunction, further ordered Krueger to "[r]eturn $80,000 to the Cru Energy bank account number 7038038340 to said account no later than July 18, 2011," to "[r]efrain and desist from denying or restricting Michael Torres' access to all money in Cru Energy, Inc.'s bank account number 7038038340 or any other account in the name of Cru Energy, Inc. at Wells Fargo Bank for usual and customary purposes of Cru Energy, Inc.," and to "[r]efrain and desist from denying or restricting Michael Torrres' access to or control over the Cru Energy, Inc. Website registered in the company's name . . . ."

On January 18, 2012, Krueger filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of Texas. Subsequently, Cru Energy filed a motion for relief from the automatic stay, and the bankruptcy court modified the stay to allow Cru Energy to pursue criminal contempt charges against Krueger relating to his obligations under the temporary

3

orders. On September 6, 2012, following a hearing, Krueger was held in contempt for violating the temporary restraining order by making three cash withdrawals on June 17, 2011, totaling $3,091.21, from the Wells Fargo Account referenced in the order. Krueger was subsequently committed to the Travis County Jail for three consecutive days.

In November 2012, Cru Energy pursued additional contempt charges against Krueger relating to alleged violations of the first temporary injunction. Cru Energy alleged that Krueger had violated the injunction by failing to cease and desist from either directly or indirectly "making or initiating any withdrawals or transfers from any of Cru Energy, Inc. bank accounts, including, but not limited to, the Wells Fargo Account as defined in Plaintiffs' Original Petition." Specifically, according to Cru Energy, Krueger admitted that he had "held $80,000 in trust for Cru Energy, Inc." and that he had "withdrew and transferred all of that money in separate violations of the Temporary Injunction."

Cru Energy also alleged that Krueger had further violated the injunction by failing to cease and desist from either directly or indirectly "contacting any of Cru Energy Inc.'s investors or potential investors, or any other persons doing business with or potentially a participant in the business of Cru Energy, Inc., except as specifically authorized by Michael Torres." According to Cru Energy, Krueger had contacted "multiple investors, vendors, and potential contractors and employees of Cru Energy." These alleged contacts "includ[ed] but [were] not limited to": (1) sending an email to several investors and potential contractors and employees of Cru Energy; (2) contacting and ultimately contracting with DSL, a vendor of Cru Energy; (3) contacting on multiple occasions Pablo Cortez and Robert Cook, both of whom were employees of Cru Energy;

4

(4) contacting an employee of Seva Energie, a vendor of Cru Energy; and (5) sending an email to Dr. Patrick Hayes, "an investor and potential vendor or customer" of Cru Energy.

A hearing was held on the allegations. At the hearing, the district court admitted into evidence the transcript of the September contempt hearing (but not the documentary evidence from that hearing) and took "judicial notice of its court file."[2] The district court proceeded to consider additional evidence regarding the allegations, including the testimony of Krueger and former Cru Energy employees Cook and Cortez. Documentary evidence was also admitted relating to Krueger's allegedly improper contacts, including copies of email messages and phone logs.

At the conclusion of the hearing, the district court found that Krueger had violated the temporary injunction as alleged. Specifically, the district court found that Krueger had made 23 separate withdrawals and transfers from a Cru Energy bank account (the account was not specifically identified in the contempt order, other than as "the bank account holding Cru Energy, Inc. funds"), in the aggregate amount of approximately $80,000. The district court further found that Krueger had also violated the injunction by sending an email to several investors and employees of Cru Energy, sending an email to a vendor of Cru Energy, and sending emails to Pablo Cortez, an employee of Cru Energy. For each violation, the district court committed Krueger to jail for five consecutive days, for a total term of confinement of 125 days. Krueger was immediately taken into custody and confined to the Travis County jail.[3] This habeas-corpus proceeding followed.

---

[2] The record reflects that most of the evidence concerning the alleged withdrawals and transfers was admitted during the September hearing.

[3] Krueger was confined from December 19, 2012, when he was taken into custody, through December 31, 2012, when this Court ordered him released upon the posting of bond.

5

## STANDARD AND SCOPE OF REVIEW

Contempt is "broadly defined" as "disobedience to or disrespect of a court by acting in opposition to its authority." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (citing *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding)). "[C]ontempt is a broad and inherent power of a court." *Id*. (citing *Ex parte Browne*, 543 S.W.2d 82, 86 (Tex. 1976) (orig. proceeding)). However,

> [D]espite the breadth of a court's contempt power, we have warned it is a tool that should be exercised with caution. As the Court of Criminal Appeals has explained, "[c]ontempt is strong medicine"—the alleged contemnor's very liberty is often at stake—and so it should be used "only as a last resort."

*Id*. (internal citations omitted).

An order finding a party in contempt is not an appealable order. *See Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985). Therefore, the only remedies available to the contemnor are obtaining a writ of mandamus if the contemnor is not confined, or a writ of habeas corpus if, as here, the contemnor is subject to confinement. *See In re Long*, 984 S.W.2d 623, 625 (Tex. 1999); *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967). "The remedy [of habeas corpus] is in the nature of a collateral attack and its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully imprisoned." *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). In a habeas-corpus proceeding, the order or judgment challenged is presumed to be valid until the relator has discharged his burden of showing otherwise. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (citing *Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938)). For the relator to

6

be entitled to release from custody, "the trial court's order of commitment must be void, either because it was beyond the power of the court or because it deprived the relator of his liberty without due process of law." *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980).

The amount of due process afforded to the contemnor depends on the type of contempt being charged. "Contempt may occur in the presence of a court (direct contempt), or outside the court's presence (constructive contempt)." *Reece*, 341 S.W.3d at 365 (citing *Gordon*, 584 S.W.2d at 688). Because constructive contempt occurs outside the court's presence, more procedural safeguards are afforded to constructive contemnors, including notice, a hearing, and the opportunity to obtain an attorney. *See Ex parte Krupps*, 712 S.W.2d 144, 147 (Tex. Crim. App. 1986); *Ex parte Werblud*, 536 S.W.2d 542, 546 (Tex. 1976) (orig. proceeding). It is undisputed that the contempt alleged in this case, the violation of a written court order that occurred outside the court's presence, is constructive contempt. *See Chambers*, 898 S.W.2d at 259.

"Contempt is further classified into either civil or criminal contempt." *Reece*, 341 S.W.3d at 365. "Civil contempt in Texas is the process by which a court exerts its judicial authority to compel obedience to some order of the court." *Ex parte Padron*, 565 S.W.2d 921, 924 (Tex. 1978) (orig. proceeding). Once the contemnor obeys the court order, the contemnor is released from his confinement. *See Werblud*, 536 S.W.2d 545. In other words, "the civil contemnor 'carries the keys of his prison in his own pocket.'" *Id*. (quoting *Shillitani v. United States*, 384 U.S. 364, 368 (1966)). "Criminal contempt[,] on the other hand[,] is punitive in nature." *Id*. "The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court." *Id*. Here, it is

7

undisputed that Krueger was subject to criminal contempt, confined as punishment for his completed act of allegedly violating a court order and without the ability to obtain his release through compliance. *See Reece*, 341 S.W.3d at 365.

"Many constitutional rights are accorded criminal contemnors." *Werblud*, 536 S.W.2d at 547. This is because "criminal contempt is a crime in every fundamental respect," *Bloom v. Illinois*, 391 U.S. 194, 201 (1968), and constitutional protections are required to ensure that the power to hold a person in contempt is not abused. *See id*. These rights include "full and complete notification" of the charges and a "reasonable opportunity to meet the charges by way of defense or explanation," *Gordon*, 584 S.W.2d at 688, the right to assistance of counsel if requested, *Ex parte Hiester*, 572 S.W.2d 300, 302 (Tex. 1978), the privilege against self-incrimination, *Werblud*, 536 S.W.2d at 547-48, and the right to a jury trial if the proposed punishment exceeds six months' imprisonment. *Taylor v. Hayes*, 418 U.S. 488, 495 (1974); *Werblud*, 536 S.W.2d at 547. Because "contempt proceedings are quasi-criminal in nature," the procedures followed in contempt cases "should conform as nearly as practicable to those in criminal cases." *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986) (orig. proceeding); *Ex parte Johnson*, 654 S.W.2d 415, 420 (Tex. 1983) (orig. proceeding); *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding).

A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Chambers*, 898 S.W.2d at 259. "In reviewing the record, we are without jurisdiction to weigh the proof and determine whether it preponderates for or against

8

the relator; rather, we determine only if the judgment is void because, for example, the relator has been confined without a hearing or with no evidence of contempt to support his confinement." *Id*. at 259-60. A reviewing court will issue a writ of habeas corpus and release the contemnor if either the contempt order or the order underlying the contempt is void, because "one may not be held guilty of contempt for refusing to obey a void order." *Ex parte Shaffer*, 649 S.W.2d 300, 301-02 (Tex. 1983).

**ANALYSIS**

Krueger contends that the contempt order is void for five reasons: (1) the temporary injunction underlying the contempt order is void for failing to comply with the requirements of Texas Rule of Civil Procedure 683; (2) the temporary injunction is not sufficiently specific; (3) the show-cause order informing Krueger of the contempt charges failed to notify him that criminal confinement and a criminal penalty would be sought as punishment; (4) there was no evidence supporting the district court's findings that Krueger violated the injunction by making withdrawals or transfers from Cru Energy bank accounts; and (5) there was no evidence supporting the district court's findings that Krueger violated the injunction by making contact with the individuals he was prohibited from contacting. We agree with Krueger that the temporary injunction he was alleged to have violated is void for failure to comply with the requirements of Rule 683.

"The law demands clear and complete orders granting injunctions." *Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.) (citing Tex. R. Civ. P. 683). Rule 683 provides in pertinent part that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and

not by reference to the complaint or other document, the act or acts sought to be restrained. Tex. R. Civ. P. 683. "The requirements of Rule 683 are mandatory and must be strictly followed." *Interfirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam). "When a temporary injunction order does not adhere to the requirements of Rule 683 the injunction order is subject to being declared void and dissolved." *Id.*; *see Qwest Commc'ns. Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam).

"'[T]he obvious purpose of [Rule 683] is to adequately inform a party of what he is enjoined from doing and the reason why he is so enjoined.'" *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.) (quoting *Schulz v. Schulz*, 478 S.W.2d 239, 244-45 (Tex. Civ. App.—Dallas 1972, no writ)) (alteration in original). Therefore, "an injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Villalobos v. Holguin*, 146 Tex. 474, 208 S.W.2d 871, 875 (Tex. 1948). Stated another way, "[t]he injunction must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Drew v. Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 156 (Tex. App.—Austin 1998, pet. denied) (citing *Slavin*, 412 S.W.2d at 44). "Interpretation of the provisions of the court order in question should not rest upon implication or conjecture." *Id.*

"On the other hand, a court order need not be 'full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare

10

it vague.'" *Id*. (quoting *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ. App.—Dallas 1979, no writ)). Rather, "the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written." *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (Tex. 1956). But an injunction "must not be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex. App.—San Antonio 1985, no writ) (citing *Villalobos*, 208 S.W.2d at 875).

The temporary-injunction provisions at issue in this case prohibited Krueger from: (1) "making or initiating any withdrawals or transfers from any of Cru Energy, Inc. bank accounts, including, but not limited to, the Wells Fargo Account as defined in Plaintiff's Original Petition"; and (2) "contacting any of Cru Energy Inc.'s investors or potential investors, or any other persons doing business with or potentially a participant in the business of Cru Energy, Inc., except as specifically authorized by Michael Torres." We conclude that neither provision complies with Rule 683.

We first address the prohibition against withdrawals or transfers from "any of Cru Energy, Inc. bank accounts, including, but not limited to, the Wells Fargo Account as defined in Plaintiff's Original Petition." This prohibition violates Rule 683 in two ways. First, rather than describing in reasonable detail the Wells Fargo Account, the injunction describes the account solely by reference to a separate document, the petition, that contains identifying information regarding the account in question. Thus, the petition—not the injunction—provides the means of describing the

11

act or acts sought to be restrained. This is a violation of Rule 683's requirement that the injunction "describe in reasonable detail and *not by reference to the complaint or other document*, the act or acts sought to be restrained." *See* Tex. R. Civ. P. 683 (emphasis added).

In its brief, Cru Energy acknowledges that "[a]t best, if transfer from that [Wells Fargo] account had formed the basis of the contempt finding, it may have been subject to habeas corpus for that portion of the judgment." However, Cru Energy contends that the reference in the injunction to the Wells Fargo Account was "merely an example" of an account that Krueger was prohibited from accessing, and it "was irrelevant to the [contempt order] because it was not the account Relator transferred the money from and for which he was held in contempt."[4] In other words, according to Cru Energy, the only possible problem with the injunction is the reference to the Wells Fargo Account, which Krueger was not alleged to have accessed. Therefore, in Cru Energy's view, if that portion of the injunction is found to be void, it does not affect the validity of the contempt order.

However, Cru Energy's argument overlooks the second way in which the prohibition violates Rule 683. In addition to impermissibly describing the Wells Fargo Account by reference to another document, the entire prohibition on withdrawals and transfers fails to describe in reasonable detail the other accounts that Krueger is enjoined from accessing. The injunction prohibits Krueger from making withdrawals or transfers from "any" Cru Energy bank accounts, "including but not limited to" the Wells Fargo Account. But the injunction does not describe in

---

[4] We note that the contempt order did not specifically identify the account from which Krueger had transferred money in violation of the injunction, other than as "the bank account holding Cru Energy, Inc. funds." The record reflects that there was more than one such account.

12

reasonable detail those other accounts. There are no account numbers listed in the injunction, no identification of the banks in which the accounts exist, and no information describing the history or current status of the accounts. Thus, even if we were to disregard the portion of the injunction that referenced the Wells Fargo Account, the injunction still violates Rule 683's requirements that the injunction "shall be specific in terms" and "shall describe in reasonable detail . . . the act or acts sought to be restrained." *See* Tex. R. Civ. P. 683.

Cru Energy argues that the injunction "is in the most detail possible since Mr. Krueger would have to have known an account which fit that description in the injunction in order to be entitled to transfer money out of it" and that "Krueger himself established the Cru account he took the funds out of after he acquired knowledge of the July 5, 2011 injunction." However, Rule 683 requires that the injunction be as "definite, clear and precise as possible . . . without calling on [the enjoined party] for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Villalobos*, 208 S.W.2d at 875. The injunction here, by not specifically identifying the off-limit accounts, required Krueger to make "inferences or conclusions about which persons might well differ" regarding the accounts he was prohibited from accessing and, consequently, "left for further hearing" the issue of whether withdrawals and transfers from certain accounts violated the injunction.[5] Thus, the injunction

---

[5] The record of the September 6 contempt hearing reflects this problem. At the hearing, Krueger testified that at one point he withdrew $160,000 from a Cru Energy bank account and transferred the funds into his personal account, which, Krueger claimed, was "linked" to a Cru Energy bank account. He later withdrew $56,000 of those funds from his personal account and transferred the funds into another account that, according to Krueger, was an "operating Cru Energy account" that he had opened at Bank of America without authorization from Michael Torres. At another point in his testimony, Krueger admitted to withdrawing $80,000 from "a Cru Energy bank

13

failed to comply with the specificity requirements of Rule 683. *See Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 222-23 (Tex. App.—Dallas 2005, no pet.) (holding that lack of specificity in injunction was not cured by any knowledge that enjoined party may have had).

We also disagree with Cru Energy's contention that the injunction was in "the most detail possible." The second temporary injunction, which Krueger was not alleged to have violated, specifically ordered Krueger to "[r]eturn $80,000 to the Cru Energy bank account number 7038038340 to said account no later than July 18, 2011," and to "[r]efrain and desist from denying or restricting Michael Torres' access to all money in Cru Energy, Inc.'s bank account number 7038038340 or any other account in the name of Cru Energy, Inc. at Wells Fargo Bank for usual and customary purposes of Cru Energy, Inc." Thus, the second injunction specifically identified the relevant bank accounts, leaving no doubt as to how Krueger was to comply with the injunction. The first injunction, on the other hand, contained no such specificity. To comply with Rule 683, the first injunction merely needed to "describe in reasonable detail" the bank accounts that Krueger was prohibited from accessing. *See* Tex. R. Civ P. 683. This was not an impracticable requirement—providing the specific bank account names and numbers would have sufficed. By not

---

account," but claimed that the trial court "didn't specifically say that I wouldn't have access to that account." Without specificity in the injunction, questions remain as to which particular accounts qualify as "Cru Energy, Inc. bank accounts" for purposes of the injunction. For example, was Krueger's personal account considered a "Cru Energy, Inc. bank account" at the time it contained $160,000 of Cru Energy funds? Similarly, was the Bank of America account, which Krueger testified he had opened without authorization from Torres, actually a "Cru Energy, Inc. bank account" or, due to the lack of authorization, was it another one of Krueger's personal accounts? Such questions can be answered only by drawing inferences and conclusions based on information not contained within the injunction.

14

providing that or similar information identifying the specific accounts that Krueger was enjoined from accessing, the injunction failed to comply with Rule 683.

We next address the prohibition against Krueger "contacting any of Cru Energy, Inc.'s investors or potential investors, or any other persons doing business with or potentially a participant in the business of Cru Energy, Inc., except as specifically authorized by Michael Torres." This portion of the injunction violates Rule 683 by failing to describe in reasonable detail the individuals or organizations that Krueger was prohibited from contacting. Specifically, the injunction fails to name or otherwise identify those who are considered "investors or potential investors" of Cru Energy, and those who are "persons doing business with or potentially a participant in the business of" Cru Energy.

Cru Energy argues that because of Krueger's role in running the company, he is "in a position to know who were investors and persons doing business with Cru [Energy]." Even assuming that this is true,[6] an injunction must be as "definite, clear and precise as possible . . .

---

[6] There is some authority for the proposition that, at least in the context of covenants not to compete, injunctions generally restraining solicitation of customers and not specifically listing the individual customers are not impermissibly vague. *See Safeguard Bus. Sys., Inc. v. Schaffer*, 822 S.W.2d 640, 644-45 (Tex. App.—Dallas 1991, no writ). This is because, in that context, it is not "unreasonable to assume that he who is sought to be enjoined is sufficiently familiar with the employer's business and its customers to avoid violating the injunction." *Id*. This case presents a different situation. First, Krueger is prohibited from contacting not merely current investors and persons currently doing business with Cru Energy, but also "potential" investors and "potential" participants in the business. Additionally, despite whatever role Krueger may have had in Cru Energy in the past, the record reflects that during the ongoing litigation, Michael Torres has been making business decisions for the company, and there is no indication in the record that Torres has notified Krueger of whom Torres might be soliciting to become an "investor or potential investor in" Cru Energy, or of whom Torres might be considering to become "a person doing business with or potentially a participant in the business of" Cru Energy. Thus, it would not be reasonable on the facts of this case to assume that Krueger is sufficiently familiar with Cru Energy's investors,

15

without calling on [the enjoined party] for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Villalobos*, 208 S.W.2d at 875. The above prohibition fails to inform Krueger of who he is enjoined from contacting, and it requires him to infer the identity of those individuals based on his then-existing knowledge of the company's operations. This is similar to the injunction in *Computek*, 156 S.W.3d at 221-23, that was held to violate Rule 683. In that case, OEM Supplies (OEM) and the owner of Computek, Michael Williams, were opposing parties in litigation involving Computek's alleged use of trade secrets to form a competing company in violation of a covenant not to compete. *Id*. at 219-20. Computek had been permanently enjoined "from doing business, or authorizing anyone else to do business, with any OEM client not listed on Attachment A or that was a new account set up while Williams worked for OEM." *Id*. at 221. Although Attachment A listed some clients whom Computek could contact, the injunction did not name or otherwise identify the clients whom Computek could not contact. *Id*. Computek contended that due to this lack of specificity, it could not know whether contacting certain clients violated the injunction. *Id*. at 221-22. The appeals court agreed, explaining its reasoning as follows:

> [T]hese paragraphs [of the injunction] enjoin Computek from taking specific actions involving specific OEM clients who are not identified or listed in the permanent injunction, and from using or disclosing information and files that are not specifically identified in the permanent injunction. Because these OEM clients are not specifically named, we agree with Computek that it must ask every non-ABBA contact it makes whether it was an OEM client during the relevant times, and that question may be construed as "canvassing" or "soliciting," and thus a violation of the

_____

potential investors, and "any other persons doing business with or potentially a participant in the business of" Cru Energy, to avoid violating the injunction.

16

permanent injunction. We agree with Computek that the permanent injunction lacks specificity in this regard.

*Id*. at 222. In response to OEM's argument that Computek "ha[d] the information as to the clients it may not contact 'as demonstrated by their repeated contacts of those clients,'" the appeals court observed,

> [E]ven if the trial court had expressly found Computek had such information, rule 683 provides that the order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or any other document, the act or acts sought to be restrained." Thus, the injunction itself must provide the specific information as to the off-limits clients, without inferences or conclusions, or, in this case, implied references to other records Computek might have. Thus, we cannot agree with OEM that the lack of specificity as to OEM clients is cured by any knowledge Computek may have outside the permanent injunction.

*Id*. at 222-23. Similarly, in this case, the injunction does not identify the individuals who Krueger is prohibited from contacting, and it requires Krueger to make inferences or conclusions concerning whom those individuals are. In fact, this injunction is even more vague than the injunction at issue in *Computek*, which at least provided a list of specific clients who Computek could contact. *See id*. at 221. Krueger was not specifically informed of either whom he was allowed to contact or whom he was enjoined from contacting.

For the above reasons, we conclude that the first temporary injunction violates the specificity requirements of Rule 683 and is, accordingly, void.[7] Consequently, the order finding

_____

[7] In its brief, Cru Energy asserts that if there is a lack of specificity in the injunction, the defect would render the injunction merely voidable (and therefore subject to attack only on direct appeal) as opposed to void. We disagree. The Texas Supreme Court has repeatedly stated that

Krueger in contempt for allegedly violating that injunction is also void. *See Shaffer*, 649 S.W.2d at 301-02; *In re Garza*, 126 S.W.3d 268, 273 (Tex. App.—San Antonio 2003, orig. proceeding). It is therefore unnecessary for us to address the other reasons why, in Krueger's view, the contempt order is void. *See Gordon*, 584 S.W.2d at 689-90; *Garza*, 126 S.W.3d at 273 n.4. We grant Krueger's petition for writ of habeas corpus, vacate the district court's contempt order, and order Krueger discharged from custody and released from the bond set by this Court on December 31, 2012.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Filed:   May 16, 2013

---

an injunction that fails to strictly comply with the requirements of Rule 683 and other rules of civil procedure is subject to being declared void. *See, e.g.*, *In re Office of Attorney Gen.*, 257 S.W.3d 695, 697-98 (Tex. 2008) (per curiam); *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam); *Interfirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam); *Lancaster v. Lancaster*, 155 Tex. 528, 291 S.W.2d 303, 308 (Tex. 1956); *see also In re Garza*, 126 S.W.3d 268, 271-73 (Tex. App.—San Antonio 2003, orig. proceeding) (rejecting contention that injunction which failed to comply with procedural requirements was merely voidable and observing that "[i]f the supreme court had meant that such a temporary injunction was voidable, we feel certain it would have used the word 'voidable.' Instead, the court has repeatedly used the word 'void'").