**HELLENIC INVESTMENT, INC., Pasadena Associates and Equity Fund Advisors, Inc., Appellants,**

v.

**The KROGER COMPANY, Appellee.**

**No. 01–88–00886–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 1, 1989.

Michael Maness, Houston, for appellants.

Mark E. Lowes, Charlotte C. Orr, Braccewell & Patterson, Houston, for appellee.

Before EVANS, C.J., and COHEN and SAM BASS, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a permanent injunction enjoining the operation of a "night club" in a shopping center.

The shopping center, situated in Pasadena, Texas, is owned by appellant, Pasadena Associates, and managed by the appellant, Equity Fund Advisors, Inc. Pasadena Associates leased space in the center to the appellee, the Kroger Company, to operate a grocery store. Under the terms of that lease, Pasadena Associates agreed it would not lease any other premises in the center for a "bar," "night club," or "other business of like nature." Pasadena Associates then leased space to appellant, Hellenic Investment, Inc., which opened an establishment named "Hallabaloo." Under the terms of Hellenic's lease agreement, it was permitted to use the lease premises for a "restaurant" or "dining facility" ... "with the sale of alcoholic beverages, dancing, games, and related facilities and activities." [1] In an "Addendum" to the lease

---

1. PERMITTED USE: The demised premises shall be used for a restaurant or dining facility with the sale of alcoholic beverages, dancing, games, and related facilities and activities. Tenant shall, at all times during the term of this lease, maintain a full and complete service kitchen during the hours of 8:00 p.m. through and including 1:00 a.m. on all of Tenant's business days. Tenant shall serve food which may include, but not be limited to, ribs, hamburgers, hot dogs, nachos, chicken fingers, fajitas, cold roast beef and ham sandwiches. Tenant may not serve any of the following: barbeque, pizza, Italian food, Chinese food, Continental food, ice cream (other than for dessert), fried chicken, steaks or seafood. Tenant shall not maintain or operate more than ten electronic games at the premises nor shall Tenant maintain or operate more than four pool tables at the premises. It is the intent of both Landlord and Tenant that

agreement, Hellenic acknowledged that Kroger was the major anchor in the shopping center and that Kroger's lease prohibited Pasadena Associates from leasing center premises to a "night club"; Hellenic also warranted that it was not a "night club." The Addendum further provided that if Pasadena Associates received any complaints or threats of litigation, Hellenic would either alter its operation to satisfy the complaints or pay any legal fees, expenses, and damages incurred by Pasadena Associates.[2]

In February 1988, Hellenic opened the Hallabaloo as a "supper club," investing approximately $150,000 in renovating the premises. This new business venture was a huge success, and it immediately attracted large crowds of customers. As a result, the shopping center parking lot was often congested with customers' vehicles, particularly on weekends, and sometimes Kroger's customers could not find parking space in the center parking lot. There were also complaints of an "inordinate amount of trash on the parking lot" on weekends, and some complaints of harrassment of Kroger's customers by Hellenic's patrons. Both Hellenic and Kroger tried to solve these problems by hiring additional security, valet parking, and clean-up services. But those remedial measures were only partially successful.

In April 1988, Kroger sought and obtained a temporary injunction against Hellenic, Pasadena Associates, and the center manager, Equity Fund, Inc., which enjoined the continued operation of Hallabaloo as a "bar," "night club," or "other business of like nature." On appeal, this Court ordered the temporary injunction dissolved, concluding that the injunctive order did not set forth in reasonable detail the nature of the acts prohibited. *See Hellenic Investment, Inc. v. The Kroger Co.*, 01–88–349–CV, 1988 WL 59936 (Tex.App.—Houston [1st Dist.] June 3, 1988) (ordered not published).

In August 1988, after a non-jury trial, the trial court permanently enjoined Hellenic from operating, and Pasadena Associates and Equity Fund from leasing, the leased premises as a "night club." The injunctive order defines the term "night club" as an operation selling "alcoholic beverages while also, in combination, playing loud volume dance music, providing a space for dancing, and allowing its patrons to dance, so long as its gross food sales make up less than 70% of its gross sales of all sources."

In separate findings of fact and conclusions of law, the trial court found, among other things, that the "Hallabaloo" business was an establishment selling food and alcoholic beverages; that it permitted its customers to dance to recorded dance music played at high volumes and to play various coin-operated games, and that its advertisements over local-western radio stations emphasized "cash scrambles, free local give-a-ways and ladies night." The court also found that Hallabaloo had never provided live entertainment, and that it has a kitchen and provides a limited menu. It found that Hallabaloo frequently "gives away" food by providing free buffets and complimentary alcoholic beverages; that it is open from 4:00 p.m. until 2:00 a.m. Sunday through Thursday, and from 4:00 p.m. until 4:00 a.m. on Fridays and Saturdays, although alcoholic beverage sales cease at 2:00 a.m.; that breakfast is served from 2:00 a.m. until 4:00 a.m. on Fridays and Saturdays; and that it charges an admis-

the premises be operated so as not to disturb the quiet enjoyment of other Tenants at the Shopping Center.

**2.** Tenant acknowledges Landlord's major anchor in the Shopping Center [is] The Kroger Company. Tenant further acknowledges Kroger's lease with Landlord prohibits leasing to a nightclub in the Shopping Center. Tenant hereby warrants it is not a night club. In the event, subsequent to the opening, Landlord receives complaints or threats of litigation from Kroger, Tenant will either alter its operation to satisfy Kroger's allegations or will pay all legal fees, expenses and awards, both its own and Landlord's to defend any action brought by Kroger. In the event Tenant loses said litigations, Tenant will terminate its lease and vacate the premises holding Landlord completely harmless from any damage from Kroger [or] Tenant or any other party.

sion fee of $2 to single men on Friday and Saturday nights.

The court further found that Hallabaloo's food sales accounted for only a small percentage of its revenues and that most of its revenues came from the sale of alcoholic beverages. Finally, the court found that Hallabaloo was operated as a night club, as that term was generally understood in the food and beverage service industry, and that at no time had it been operated as a restaurant. In conclusion, the court surmised in its findings, that there "may be a fine line between a restaurant and a night club in some circumstances but such is not the case here." Concluding that Hallabaloo's operation "in its present form" inflicted intangible, non-economic harm on Kroger by altering the character of the center and threatened the loss of Kroger's customers who "have negative perceptions" about grocery stores in shopping centers that are also occupied by businesses similar to Hallabaloo, the court determined that injunctive relief was appropriate. All three appellants complain of the trial court's injunctive order.

In 10 points of error, the appellants contend: (1) that the trial court erred, as a matter of law, in concluding that Kroger was entitled to relief against Hellenic as a third party beneficiary under the Hellenic lease addendum; (2) and (3) that there were no fact findings nor any evidence to support that conclusion; (4) and (5) that the trial court erred, as a matter of law, in concluding that the term "night club" was sufficiently clear and unambiguous to be enforceable, and that there was no legal basis for the definition of "night club"; (6), (7), and (8), that the trial court erred in concluding that Kroger's lease had been breached by Hellenic's lease, or because of a denial of Kroger's right of uninterrupted access to its loading area and docks, or because of the congestion and littering of the parking area, and that there was no evidence that Equity Fund was a party to the Kroger lease or otherwise responsible for asserted breaches of it; (9) that the trial court abused its discretion in permanently enjoining the playing of dance music at "loud" volumes because such term was not sufficiently specific to constitute a legal basis for injunctive relief; and (10) that the trial court erred in awarding attorney's fees to Kroger.

We first consider Hellenic's contentions, advanced in points of error one through three, in which it asserts that Kroger is not entitled to injunctive relief as a third-party beneficiary under the Hellenic lease addendum. Hellenic argues that even though a contract provision may incidentally benefit a third party, and the parties to the contract may have intended such incidental benefit, a third-party beneficiary relationship does not arise unless it "clearly appears" that the contract was formed "primarily" for the benefit of the third party and that the parties intended to give the third party a right of action for its breach. In support of this contention, Hellenic cites *Republic National Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 81 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.) and *Briercroft Sav. & Loan Ass'n v. Foster Financial Corp.*, 533 S.W.2d 898, 901 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.).

Hellenic further argues that the status of a third-party beneficiary cannot "rest on implication," citing *Exchange Bank & Trust v. Lone Star Life Ins. Co.*, 546 S.W.2d 948, 952 (Tex.Civ.App.—Dallas 1977, no writ), and that "any doubt should be resolved" against a finding of such status. *See Texas Bank & Trust v. Lone Star Life Ins. Co.*, 565 S.W.2d 353, 357 (Tex.Civ.App.—Tyler 1978, no writ).

Hellenic correctly asserts that because Kroger was not a party to the lease between Pasadena and Hellenic, and since Hellenic was not a party to the lease between Pasadena and Kroger, Kroger cannot enforce the Hellenic addendum without third-party beneficiary status.

■ A party suing as a third-party beneficiary must demonstrate that (1) it is not privy to the written agreement, (2) the contract was actually made for its benefit and (3) that the contracting parties intended that it benefit by it. *Republic Nat'l Bank v. National Bankers Life Ins. Co.*,

427 S.W.2d 76 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). The intention of the contracting parties has controlling significance for determining whether a third party may enforce a contract provision. *Corpus Christi Bank and Trust v. Smith,* 525 S.W.2d 501, 503 (Tex.1975). In determining intent, courts must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that the contracting parties intended such. *Id.*

■■■ Mickey Altman, a representative of Pasadena Associates, testified that the addendum was included because he "did not want to violate the Kroger lease and [he] wanted to make certain that whoever operated a facility in that space knew what the Kroger lease had in it insofar as that particular provision was concerned." The addendum was included to "make sure they could use it for a restaurant but not a nightclub." Karl Mangrum, the leasing agent for Equity Fund, testified that the parties discussed the need to "indemnify ourselves in case there was a future problem" with Kroger's prohibition against a nightclub.

Hellenic contends that this testimony proves that the purpose of the Addendum was to insure that a "nightclub" would not be operated on the leased premises and through an indemnification clause, to protect Pasadena and Equity Fund from claims asserted by Kroger not to give Kroger the right to sue Hellenic for a breach of the Hellenic lease.

In order for Kroger to obtain protection as a third-party beneficiary under the Hellenic lease addendum, it simply was required to show it was not a party to the contract, that the contract was made for its direct benefit, and that the contracting parties intended that it so benefit. *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 775 (Tex.1983); *Republic Nat'l Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d at 79.

The Hellenic lease addendum expressly restricts Hellenic's use of the premises, and it confirms Hellenic's acknowledgement that such restricted use is compelled by the terms of its landlord's lease with the anchor lessee, Kroger. The lease addendum clearly evidences the parties' intent and understanding that Kroger is to be a primary beneficiary of the restrictive use provision. Therefore, Kroger, as a third-party beneficiary of this contractual agreement, was entitled to seek injunctive relief to protect itself against a violation of the restrictive use covenant. *See Fort Worth Driving Club v. Fort Worth Fair Ass'n,* 103 Tex. 24, 122 S.W. 254 (1909); *125 Hempstead Turnpike Corp. v. Tracco Hempstead, Inc.,* 14 Misc.2d 554, 177 N.Y. S.2d 778 (1958); *Handfinger v. Stevelaw Realty Corp.,* 102 N.Y.S.2d 688 (1950); 51C C.J.S. *Landlord and Tenant,* sec. 343, p. 874 (1968). We accordingly overrule the first three points of error.

We move to the next two points of error, points four and five, which assert that the term "night club" is so ambiguous that it cannot support the injunctive decree. Under these points, Hellenic argues that there is no commonly understood distinction between a "night club," on the one hand, and a "restaurant" or "dining facility" that serves alcoholic beverages and permits dancing. Hellenic points out that it is allowed, under the express terms of its lease, to sell alcoholic beverages and to permit its patrons to dance.

■■ Kroger, in reliance on the testimony of its witness, Dr. Waskey, a professor of hotel and restaurant management at the University of Houston, contends that a "night club" has certain characteristics that distinguish it from a restaurant. Dr. Waskey testified that a "night club" has four key characteristics: (1) food and alcoholic beverages are sold, and entertainment is provided; (2) dancing is the main form of entertainment, with patrons dancing on "shuttering floors to recorded music played by disc jockeys at deafening volumes"; (3) special effects, strobe lights, fog-making machines, mirror balls, and bar tables and bar stools; and, (4) alcoholic beverages accounting for more than 75% of gross revenue. By comparison, Dr. Waskey testified

that a restaurant's food sales account for more than 80% of its gross sales.

Dr. Waskey also testified that the two primary activities at Hallabaloo are dancing and drinking alcoholic beverages. According to Dr. Waskey, Hallabaloo has recorded music played by a disc jockey at deafening volumes. Its patrons dance on three dance floors and drink alcoholic beverages at three bars. It has fog machines, strobe lights, and mirror balls. It sometimes has a cover charge and sometimes offers a free food buffet. There are no normal restaurant tables, just bar tables and bar stools. Radio advertisements include "dash-for-cash" and "back-to-the-beach" contests, ladies night, and free food buffets. In Dr. Waskey's expert opinion, Hallabaloo was operated as a "night club."

█ As a general rule, parties are presumed to contract in reference to the usage or custom prevailing in the particular trade or business to which the contract relates, and evidence of custom or usage, which tends to explain the intent of the parties regarding an ambiguous contract term, is generally admissible to assist the factfinder in ascertaining the parties' true intent. *See City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968); *Dwyer v. City of Brenham*, 70 Tex. 30, 7 S.W. 598, 599 (1888); *Rosenstock v. Wheeler*, 310 S.W.2d 350, 354 (Tex.Civ.App. —Houston 1958, writ ref'd). The testimony of Dr. Waskey was admissible evidence to explain the meaning of the term "night club" as used in the lease agreement.

█ Under the terms of the Hellenic lease, Hellenic was permitted to operate a restaurant or dining facility, with attendant liquor and dancing privileges, but was not allowed to operate a "bar" or "night club." Based on the evidence before it, the trial court could properly have found that Hellenic was operating a "night club" facility, as that term is used in the Hellenic lease agreement.

█ But our determination of that question is not dispositive of the appeal. The ultimate question is whether, under established principles of equity, the trial court's injunctive decree is enforceable under the facts of this case. Thus, we must decide whether Hellenic can be prevented from operating a legitimate business enterprise, if and whenever its gross food sales do not make up more than 70% of its total gross sales.

Kroger does not complain about Hellenic's sale of alcoholic beverages, nor about Hellenic's allowing its customers to dance. Neither does Kroger object to any other "night club" aspects of Hellenic's operation, such as the use of strobe lights and special effects, which, according to Dr. Waskey's testimony are indicia of a "night club" operation. Moreover, while Kroger did complain about "loud" dance music and about the congestion and littering of the center's parking area, it sought no specific relief regarding those complaints.

Kroger's principal complaint, here and in the trial court, focuses on the ratio between Hellenic's food and alcoholic beverage sales. This ratio of food to alcoholic beverage sales, Kroger contends, results in a loud and boisterous crowd of undesirable persons frequenting the center parking lot at a time when many of Kroger's customers are using its grocery store.

We recognize the general rule that an injunctive decree should inform a defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. *See Fort Worth Acid Works v. Fort Worth*, 248 S.W. 822, 824– 825 (Tex.Civ.App.—Fort Worth) *aff'd*, 259 S.W. 919 (Tex.Comm.App.1922). But an injunctive decree should not be framed so broadly as to prohibit the enjoyment of lawful rights. *Rubin v. Gilmore*, 561 S.W.2d 231 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Seline v. Baker*, 536 S.W.2d 631 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *City of Wichita Falls v. Jensen*, 221 S.W.2d 1015 (Tex.Civ.App.— Fort Worth 1949, no writ); *Dincans v. Keeran*, 192 S.W. 603 (Tex.Civ.App.—San Antonio 1917, no writ). Thus, it has been held that a business lessee should not be prohibited from pursuing a lawful enter-

prise, except upon evidence showing a clear violation of the lease terms or that the conduct of the business constitutes a nuisance. *See Block v. Fertitta,* 165 S.W. 504, 506 (Tex.Civ.App.—Galveston 1914, no writ) (sublessee conducting business alleged to be noisy but not a nuisance); *see also Dilts v. Faulkner,* 289 S.W. 131, 132 (Tex.Civ.App.—Dallas 1926, no writ).

■ Moreover, where a party's acts are divisible, and some acts are permissible and some are not, an injunctive decree should not issue to restrain actions that are legal or about which there is no asserted complaint. *See Southern Traffic Bureau v. Thompson,* 232 S.W.2d 742, 750 (Tex.Civ. App.—San Antonio, 1950, writ ref'd n.r.e.). Thus, the entry of an injunctive decree that enjoins lawful, as well as unlawful acts, may constitute an abuse of discretion. *Id.*

We conclude that, under the particular circumstances shown by the record in this case, the trial court's injunctive decree cannot be enforced as written. Although the court's decree recognizes Hellenic's right to sell alcoholic beverages and to allow dancing on its premises, the decree prohibits the exercise of those lawful acts in the event that the ratio of Hellenic's food to alcoholic beverage sales falls below a certain percentage figure. Thus, the court's decree makes Hellenic's food/alcoholic beverage sales ratio the controlling factor in determining whether Hellenic's "combination" of lawful uses constitutes the operation of an impermissible "night club."

We hold that the trial court's decree is unenforceable to the extent that it compels Hellenic, under threat of contempt, to manage its internal business operations in such a way that its food and alcoholic beverage sales are within the specified percentage ratio. We therefore sustain the appellants' contentions advanced under points of error five, six, seven, and eight, and in view of our disposition of these points, we need not consider the remaining points of error.

Our ruling on this appeal is entered without prejudice to Kroger's right, in this or any subsequent proceedings, to seek injunctive or other relief regarding its specific claims that it is being denied lawful access to its grocery store, that its customers are being subjected to harrassment, or that its parking lot rights are being violated by Hellenic's actions.

The trial court's judgment is reversed, the injunction is dissolved, and the cause is remanded for further proceedings consistent with this opinion. Costs of appeal are divided equally between the parties.