**Opinion issued October 2, 2014**



**In The**

**Court of Appeals**

**For The**

**First District of Texas**

————————————————

**NO. 01-14-00432-CV**

————————————————

**ROBERT LASSER, Appellant**

**V.**

**AMISTCO SEPARATION PRODUCTS, INC., Appellee**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-39247**

---

**MEMORANDUM  OPINION**

In this interlocutory appeal, Robert Lasser seeks review of the trial court's

May 28, 2014 order, which grants Amistco Separation Products, Inc.'s request for

a temporary injunction. Lasser raises three issues on appeal.[1] He claims, in two issues, that Amistco Separation Products has failed to show the elements necessary to obtain a temporary injunction, and, in a third issue, he asserts that the temporary-injunction order does not comply with the requirements of Rule of Civil Procedure 683.

We affirm the May 28, 2014 temporary injunction order, as modified.

## Background Summary

In 2002, ACS Industries, LP hired Robert Lasser to work in sales. When he was hired, Lasser signed an employment agreement with ACS. The Employment Agreement stated, "Employee's employment under the Agreement shall be on a day-to-day basis terminable at the will of either Party without notice." The agreement contained non-compete covenants, including confidentiality and non-solicitation provisions. The agreement prohibited Lasser from copying or using for his personal benefit ACS's "confidential information," as defined in the employment contract. The non-solicitation provision forbade Lasser from "directly or indirectly, or by action in concert with others, engaging in the solicitation of sales of competing goods to customers of ACS" for a period of two years from the contract's termination.

---

[1] A party may appeal from an interlocutory order of a district court that grants or denies a temporary injunction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2014).

2

In 2011, ACS sold certain of its assets to Amistco Separation Products, Inc. ("AMACS"). The two companies entered into an Asset Purchase Agreement on December 21, 2011. The agreement identified the assets AMACS purchased from ACS. One of the assets identified was Lasser's Employment Agreement with ACS.

The Asset Purchase Agreement also provided that certain employees, including Lasser, would remain ACS employees during a leasing period. At the end of the leasing period, the ACS employee would become an AMACS employee. The Asset Purchase Agreement also provided that certain ACS employment agreements "shall be assumed and assigned as of the termination of the Leasing Period." One of the ACS employment agreements identified was Lasser's employment contract.

During the leasing period, on February 6, 2012, ACS sent Lasser a letter stating, "This letter serves as notice of termination of your Employment Agreement, effective as of March 1, 2012." AMACS sent Lasser a written offer of employment to be effective March 1, 2012. The letter stated that Lasser's employment with ACS "will cease effective February 29, 2012." The letter also made clear that it was "not an employment agreement." Lasser became AMACS's employee on March 1, 2012.

Lasser remained an employee of AMACS, as a manager of the company's product sales, until his resignation on June 3, 2013. Lasser then went to work for Woven Metal Products, Inc. ("Woven"). At that time, AMACS did not consider Woven to be a direct competitor, but considered it to be a "sideline" competitor.

Following Lasser's resignation, AMACS conducted a forensic examination of Lasser's company laptop to determine if he had downloaded any of AMACS's confidential information before he resigned. Based on the examination, AMACS filed suit against Lasser on July 2, 2013. AMACS alleged that its forensic examination revealed that Lasser had accessed and downloaded AMACS's confidential and proprietary information before his resignation. AMACS also alleged that it had learned that Lasser's new employer, Woven, was opening a new division that would directly compete with AMACS's main product line.

AMACS asserted that Lasser had breached the non-solicitation and confidentiality agreement contained in the ACS employment contract by taking AMACS's confidential information and trade secrets to use in his new position with Woven. AMACS alleged that it had the right to enforce the employment contract because it had assumed the contract as part of the asset purchase from ACS. AMACS also asserted causes of action against Lasser for conversion, civil theft, and misappropriation of trade secrets. AMACS requested the trial court to issue a temporary and permanent injunction against Lasser ordering him to return

4

AMACS's confidential and trade secret information, enjoining him from disclosing and using its information, and preventing Lasser from soliciting its customers.

Lasser denied AMACS's claims and responded to AMACS's request for temporary injunction. Lasser asserted that AMACS had no right to enforce the ACS employment agreement. Lasser argued that ACS's assignment of the contract to AMACS was not valid because Lasser had not assented to the assignment. Lasser also claimed that language in the employment contract prohibited assignment.

On July 25, 2013, the trial court conducted an evidentiary hearing on AMACS's request for a temporary injunction. At the hearing, AMACS offered the testimony of two corporate representatives and of the forensic documents examiner who had examined Lasser's company laptop. Through the expert, AMACS introduced evidence showing the files that Lasser had accessed and downloaded before his departure.

Lasser offered his own testimony in defense of the request for the temporary injunction. He claimed that the material he had downloaded was information available to the public or had been used by him in performing his job for AMACS.

At the conclusion of the hearing, the trial court signed a temporary-injunction order. The order required Lasser not to use or disclose to others AMACS's confidential information and trade secrets, prohibited Lasser from

5

directly or indirectly soliciting any of AMACS's customers, and prohibited Lasser from deleting electronic messages or files in his possession.

Lasser appealed, challenging the July 25, 2013 temporary-injunction order. Among his challenges, Lasser asserted that the temporary injunction failed to meet the requirements of Rule of Civil Procedure 683. We agreed. We sustained Lasser's challenge of the order on the ground that it was not sufficiently detailed or specific to meet Rule 683's requirement that the injunction "shall be specific in terms" and "shall describe in reasonable detail . . . the act or acts sought to be restrained."[2]

After we issued our opinion, AMACS amended its petition, asserting claims against Lasser for breach of the Employment Agreement, for conversion of AMACS's proprietary information, and for misappropriation of its trade secrets. AMACS renewed its request for the trial court to issue a temporary injunction, seeking to prevent Lasser from using or disclosing AMACS's confidential information and trade secrets and requesting that the trial court enjoin Lasser from soliciting its customers.

The trial court conducted a hearing on AMACS request for a temporary injunction on May 16, 2014. At the hearing, the trial court took judicial notice of

---

[2]     *Lasser v. Amistco Separation Prods., Inc.*, No. 01–13–00690–CV, 2014 WL 527539, at *6 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.) (mem. op.); *see also* TEX. R. CIV. P. 683.

the evidence admitted at the July 25, 2013 temporary-injunction hearing. Lasser

also testified at the May hearing.

The trial court granted AMACS's request for temporary injunctive relief. The court signed an order on May 28, 2014, containing the following injunctive provisions:

> It is therefore ORDERED Defendant Robert Lasser desist and refrain from the following·
>
> (a) Defendant is ordered to return to AMACS, and to cease and desist from using, any of AMACS's confidential information and trade secrets. The terms confidential information and trade secrets are defined in the Lasser Employment Agreement as including, without limitation, "(i) the terms of any agreement between ACS and any employee, customer or supplier, (ii) pricing strategy, (iii) merchandising and marketing methods, (iv) product development ideas and strategies, (v) personnel training and development programs, (vi) financial results, (vii) strategic plans and demographic analysis, (viii) proprietary computer and systems software, and (ix) any nonpublic information concerning ACS, its employees, suppliers or customers." Confidential Information pursuant to this definition includes, but is not limited to: price lists, customer lists, drawings, engineering material, costing programs, engineering design programs, manufacturing process technology, application design, financial information, as well as the computer files which were introduced as evidence as Plaintiff's exhibits 7, 8, and 9 by Plaintiff's forensic expert, Mr. Dennis Williams, and that are a part of the court's record from the July 25, 2013, oral hearing on AMACS's temporary injunction;
>
> (b) Defendant is restrained from directly or indirectly disclosing, copying or otherwise reproducing, or giving others access to any of AMACS confidential information and trade secrets;
>
> (c) Defendant is restrained for a period of two (2) years beginning June 3, 2013, from directly, indirectly, or by action in concert with

7

others soliciting sales of any competing goods to any customers of AMACS.

Lasser now appeals the May 28, 2014 injunctive order, identifying three issues. He asserts that the order does not comply with Rule of Civil Procedure 683 and argues that AMACS has failed to show its entitlement to the temporary injunction because the evidence does not support it.

## A. Standard of Review

The only question before the trial court in a temporary injunction hearing is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). To be entitled to a temporary injunction, the applicant for such must plead and prove the following three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204.

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id.* On appeal, we do not review the merits of the underlying case. *Davis*, 571 S.W.2d at 861. Instead, we determine whether the trial court abused its discretion in granting or denying the relief. *Id.* at 862.

Generally, a trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts or when the record fails to reasonably support the conclusion that the applicant has a probable right of recovery. *City of Lubbock v. Coyote Lake Ranch, LLC*, No. 07–14–00006–CV, 2014 WL 2810419, at * 3 (Tex. App.—Amarillo July 10, 2014, no pet.) (citing *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975)). Given the abuse of discretion standard, we review the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *Becker v. BFE Dev. Corp.*, No. 02–13–00424–CV, 2014 WL 1875850, at *2 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op.); *see EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

## B.    Compliance with Rule 683

In his first issue, Lasser avers that the temporary-injunction order should be reversed because it does not comply with Rule of Civil Procedure 683. *See* TEX. R. CIV. P. 683. He asserts that the temporary injunction does not meet Rule 683's

specificity requirement and that the injunction's third provision, Part (c), prohibits "lawful activity." *See id.*

### 1.    *Legal Principles*

The law requires that an injunctive order comply with Rule of Civil Procedure 683. *See id.*; *Interfirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). The requirements of Rule 683 are mandatory and must be strictly followed. *See Interfirst Bank San Felipe*, 715 S.W.2d at 641; *see also Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.) ("A trial court abuses its discretion by issuing a temporary injunction order that does not comply with the requirements of rule 683.").

Rule 683 provides, "Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." TEX. R. CIV. P. 683. The purpose of Rule 683's specificity requirement is to ensure that parties are adequately informed of the acts they are enjoined from doing and the reasons for the injunction. *Layton v. Ball*, 396 S.W.3d 747, 751 (Tex. App.—Tyler 2013, no pet.); *El Tacaso, Inc. v. Jireh Star*, *Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.). For this reason, "[A]n injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained

10

from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948); *see Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.) ("The law demands clear and complete orders granting injunctions.").

This does not mean, however, that an injunction order must specifically enumerate every possible act that might constitute an unauthorized practice. *See San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956). "A court order need not be 'full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague.'" *Drew v. Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 156 (Tex. App.—Austin 1998, pet. denied) (quoting *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ. App.—Dallas 1979, no writ)). Instead, "[t]he injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped" even when the conduct takes a "somewhat different form calculated to circumvent the injunction as written." *Guardian Abstract & Title Co.*, 291 S.W.2d at 702.

Nonetheless, "[t]he injunction must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Drew*, 970 S.W.2d at

11

156. We have recognized "the general rule that an injunctive decree should inform a defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Hellenic Inv., Inc. v. Kroger Co.*, 766 S.W.2d 861, 866 (Tex. App.—Houston [1st Dist.] 1989, no writ); *see Rubin v. Gilmore*, 561 S.W.2d 231, 235–36 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ). In addition, an injunctive order "should not be framed so broadly as to prohibit the enjoyment of lawful rights." *Hellenic Inv.*, 766 S.W.2d at 866. When "a party's acts are divisible, and some acts are permissible and some are not, an injunctive decree should not issue to restrain actions that are legal . . . ." *Id.* at 867.

### 2. *Parts (a) and (b): Trade Secrets and Confidential Information*

Parts (a) and (b) of the July 25, 2013 order read as follows:

(a) Defendant is ordered to return to AMACS, and to cease and desist from using, any of AMACS's confidential information and trade secrets. The terms confidential information and trade secrets are defined in the Lasser Employment Agreement as including, without limitation, "(i) the terms of any agreement between ACS and any employee, customer or supplier, (ii) pricing strategy, (iii) merchandising and marketing methods, (iv) product development ideas and strategies, (v) personnel training and development programs, (vi) financial results, (vii) strategic plans and demographic analysis, (viii) proprietary computer and systems software, and (ix) any nonpublic information concerning ACS, its employees, suppliers or customers." Confidential Information pursuant to this definition includes, but is not limited to: price lists, customer lists, drawings, engineering material, costing programs, engineering design programs, manufacturing process technology, application design, financial information, as well as the computer files which were introduced as

12

evidence as Plaintiff's exhibits 7, 8, and 9 by Plaintiff's forensic expert, Mr. Dennis Williams, and that are a part of the court's record from the July 25, 2013, oral hearing on AMACS's temporary injunction;

(b) Defendant is restrained from directly or indirectly disclosing, copying or otherwise reproducing, or giving others access to any of AMACS confidential information and trade secrets . . . .

Lasser asserts that Parts (a) and (b) of the order do not comply with Rule 683 because they are not sufficiently specific to inform him of the prohibited conduct. Lasser complains that the definitions of "confidential information" and "trade secrets" are overly broad because they contain the phrases "including, without limitation" and "includes but is not limited to." Lasser also asserts that the definitions do not limit the categories of information to confidential information that Lasser acquired through his employment with AMACS. We disagree with Lasser's assertions.

AMACS brought this suit to prevent Lasser and his new employer from benefitting from its proprietary information, which AMACS alleges Lasser acquired through his employment with ACS and AMACS. It is true that the injunction does not specifically define every item comprising a trade secret or confidential information; however, under the previously discussed standards, this level of detail is not required. *Lockhart v. McCurley*, No. 10–09–00240–CV, 2010 WL 966029, at *4 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.).

13

To satisfy the requirement that an injunction order be "specific in terms," the order "must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing . . . ." *Guardian Abstract & Title Co*., 291 S.W.2d at 702; *see* TEX. R. CIV. P. 683; *Layton v. Ball*, 396 S.W.3d 747, 752 (Tex. App.—Tyler 2013, no pet.). This is balanced with the practicality that an injunction "must be in broad enough terms to prevent repetition of the evil sought to be stopped." *Guardian Abstract & Title Co*., 291 S.W.2d at 702; *see Lockhart*, 2010 WL 966029, at *4.

Here, the order makes clear the prohibited conduct by listing and describing specific categories and examples of information that comprise "trade secrets" and "confidential information." The specific examples of the items comprising "trade secrets" and "confidential information," when read in the context of the suit, provided Lasser with adequate notice of the information that he is prohibited from using or disclosing.[3] *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 201–02 (Tex. App.—Fort Worth 2005, no pet.) (holding that order which prohibited defendant from using "Bell trade secrets and confidential information" was sufficiently specific because injunction as a whole made it clear that this

---

[3] The May 28, 2014 injunctive order stands in contrast to the July 25, 2013 order, which we held did not comply with Rule 683. While the current order specifically lists and defines the type of information that comprises trade secrets and confidential information, the previous order made no attempt to define these terms. *See Lasser*, 2014 WL 527539, at *4–5.

14

phrase meant "information pertaining to Bell's 206B and OH–58 helicopter blades"). The order leaves nothing to conjecture. *See Lockhart*, 2010 WL 966029, at *4 (holding injunction adequately informed defendant of prohibited conducted even though terminology used in order was not defined).

Lasser also complains that the order improperly defines "confidential information" to include "the computer files which were introduced as evidence as Plaintiff's Exhibits 7, 8, and 9 by Plaintiff's forensic expert" during the July 25, 2013 hearing. Exhibit 7 identifies the computer files that AMACS's forensic computer expert, Dennis Williams, had determined were downloaded by Lasser from his company laptop. Williams testified that Exhibit 8 shows the "link files" that he discovered on Lasser's laptop, which assisted him in determining what data had been copied from the laptop onto an external USB flash drive. Williams explained that Exhibit 9 contained the "listing of the index buffer information from Mr. Lasser's boot drive" on his laptop. Williams used the index buffer to determine whether Lasser had moved files from his laptop to an external USB device. Thus, these three exhibits provided a complete picture of the electronic information downloaded by Lasser to his laptop and transferred to an external device. If anything, these exhibits provided more detail than necessary.

Lasser indicates that the computer files identified by these exhibits contain information that is not confidential because it was not acquired through his

employment with AMACS. Lasser asserts that the trial court could not limit his right to lawfully use such non-confidential information. To support his assertion, Lasser does not, however, identify what information contained in the more than one thousand computer files he downloaded from his former employer's computer system is not confidential or proprietary. Thus, we cannot determine whether the trial court's inclusion of such items in the definition of confidential information is overly broad.[4] *See Noell v. City of Carrollton*, 431 S.W.3d 682, 713 (Tex. App.—Dallas 2014, pet. filed) ("[W]ithout a discussion of the evidence offered at trial, it is impossible for this Court to appropriately evaluate the scope of the injunction in the context of the wrong the trial court was attempting to remedy.")

Lasser also asserts that the orders' reference to Exhibits 7, 8, and 9 violate Rule 683's specificity requirement because the order references the documents without attaching or incorporating them into the order. *See* TEX. R. CIV. P. 683. (providing that a temporary injunction shall be specific in its terms and shall describe in reasonable detail, not by reference to the complaint or other document, the act or acts to be restrained). However, courts have held that referencing

---

[4] Lasser asserts that we previously held, in the appeal of the July 25, 2013 order, that Exhibit 7 contained non-confidential items. Lasser misreads our earlier opinion. In that appeal, AMACS had requested this Court to modify the temporary-injunction order for the purpose of crafting a definition of "confidential information." AMACS had pointed to Exhibit 7 and other evidence to show what constituted its confidential information. *See Lasser*, 2014 WL 527539, at *4 n.2. We declined the invitation to craft the definition from the evidence admitted at the temporary-injunction hearing, a task better left to the trial court. *See id.*

16

documents in an injunction that otherwise reasonably informs of the prohibited conduct does not violated Rule 683. *See, e.g., Noell*, 431 S.W.3d at 713–14; *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 553 (Tex. App.—Dallas 1993, no writ).

Here, the injunction reasonably informs Lasser of the type of information comprising confidential information. The injunction's reference to Exhibits 7, 8, and 9 serves only to give additional notice regarding the enjoined conduct. The inclusion of the documents was not necessary to inform Lasser of the prohibited conduct. *See Noell*, 431 S.W.3d at 713–14; *Rugen*, 864 S.W.2d at 553.

In addition, Lasser is knowledgeable about the documents' content. The exhibits identify the computer files and information downloaded by Lasser from his employer's computer system. The exhibits were admitted at the temporary-injunction hearing attended by Lasser and his counsel. They remain part of the record. Thus, under the circumstances of this case, the injunction's reference to the exhibits does not violate Rule 683's specificity requirement. *See Rugen*, 864 S.W.2d at 553.

Lasser further asserts that the definition of "trade secrets" and "confidential information" should be limited to the intellectual property rights acquired by AMACS from ACS, as defined in the Asset Purchase Agreement. However, in making this assertion, Lasser does not account for the fact that he was employed by

AMACS for over one year before he resigned. The evidence showed that Lasser had access to AMACS's confidential and trade secret information during his employment. The evidence does not show that Lasser's access was limited to only ACS-related information nor does the record show that AMACS claims only that Lasser has taken ACS information.

Moreover, AMACS does not limit its claims to a breach of the confidentiality provision in the Employment Agreement. AMACS asserts a claim against Lasser for misappropriation of its trade secrets. It is well established that "a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment." *Id.* at 551. In short, AMACS is not limited to protecting only the intellectual property rights it acquired from ACS.

Finally, Lasser complains that the order fails to comport with Rule 683's specificity requirement because it obligates him to return AMACS's trade secrets and confidential information when the parties have stipulated that he has returned such information to AMACS. As stated, an injunction order must balance being sufficiently specific to inform the defendant of the acts of which he is enjoined with being sufficiently broad to prevent the repetition of the offending conduct. *See Guardian Abstract & Title Co.*, 291 S.W.2d at 702; *Layton*, 396 S.W.3d at

18

Including a specific requirement that Lasser has already performed does not serve to undermine the specificity of the injunction but does serve to prevent the need to revise the order should it be discovered, pending trial, that Lasser has any additional confidential information.

We conclude that Parts (a) and (b) of the injunctive order sufficiently satisfy the requirements of Rule 683. *See* TEX. R. CIV. P. 683.

### 3. *Part (c): Non-Solicitation Requirement*

Lasser also asserts that the non-solicitation order found in Part (c) of the injunction does not comply with Rule 683. Part (c) provides as follows:

> (c) [Lasser] is restrained for a period of two (2) years beginning June 3, 2013, from directly, indirectly, or by action in concert with others soliciting sales of any competing goods to any customers of AMACS.

Part (c) corresponds to the following non-solicitation provision found in Section 10 of the ACS Employment Agreement:

> 10. **Nonsolicitation of Customers.** For a period of two (2) years after voluntary or involuntary termination of this Agreement for any reason the Employee will not, directly or indirectly, or by action in concert with others, engage in the solicitation of sales of competing good[s] to customers of ACS.

Lasser avers that Part (c) of the order fails to comply with Rule 683 because it is too broad in its temporal scope and prohibits Lasser from engaging in the lawful activity of soliciting customers for a period longer than that required under Section 10. Lasser asserts that the evidence does not support the start date of June

19

3, 2013 found in Part (c). Lasser acknowledges that June 3, 2013 was the date that he resigned from AMACS, but he submits that the two-year non-solicitation period began to run when his employment with ACS was terminated at the end of February 2012, before he became AMACS's employee on March 1, 2012.

Lasser relies on the following provision of the Employment Agreement as governing when the two-year non-solicitation period mentioned in Section 10 began to run:

> **2. Term and Termination.** Employee's employment under this Agreement shall be on a day-to-day basis terminable at the will of either Party [ACS or Lasser] without notice. Upon the effective date of such termination, Employee's employment hereunder shall cease. . . . The rights of the parties to terminate this Agreement as provided for in this Section 2 shall prevail over any other term or understanding to the contrary.

Lasser also points to the letter he received from ACS, dated February 6, 2012, which stated, "This letter serves as notice of termination of your Employment Agreement, effective as of March 1, 2012." Lasser further relies on evidence showing that, from December 21, 2011 through the end of February 2012, ACS employees were leased to AMACS under the Asset Purchase Agreement. During this period, the evidence showed that, although leased to AMACS, the employees, including Lasser, remained employees of ACS.

In addition, Lasser points to AMACS's letter, which offered Lasser employment with AMACS effective March 1, 2014. The letter stated that Lasser's

20

employment with ACS "will cease effective February 29, 2012." The letter also stated that it was "not an employment agreement."

AMACS counters that the two-year non-solicitation period was not triggered when Lasser left ACS's employment at the end of February 2012 because AMACS had purchased and assumed the ACS Employment Agreement under the Asset Purchase Agreement, which had been signed on December 21, 2011. For this reason, AMACS asserts that the Employment Agreement was still in effect when Lasser resigned from AMACS on June 3, 2013. AMACS avers, "Since the assignment [of the Employment Agreement] occurred before the purported termination [by ACS], ACS did not have the power to terminate the contract and assignment was valid."

In support of its position, AMACS cites the following provision in the Asset Purchase Agreement:

> 1.1 <u>Purchase and Sale</u>. Subject to the terms and conditions of this Agreement, Sellers shall, or shall cause its Affiliates to, sell, transfer, assign and deliver to Purchaser, on the Closing Date, free and clear of any Encumbrance, all of Sellers' and its Affiliates' right, title and interest in and to all of the assets, properties and rights, other than the Excluded Assets, used or held for use by or in connection with the Business (collectively, the "Acquired Assets"), including the following:
>
> . . . .
>
> (d) Assumed Contracts . . . .

Section 12 of the Asset Purchase Agreement defines "Assumed Contracts" to mean "all contracts, agreements, instruments and other arrangements, written or oral, specifically described on Schedule 1.l(d)." Significantly, Schedule 1.1(d) provides, "The employment agreements listed below *shall be assumed and assigned as of the termination of the Leasing Period . . . .*" (Emphasis added.).

The Employment Agreement between Lasser and ACS was listed in the schedule as an "Assumed Contract." The evidence showed that the period in which Lasser was an employee leased to AMACS ended on February 29, 2012. That was the last date that the established evidence shows Lasser as an ACS employee.

Under the terms of the Asset Purchase Agreement, the assignment and assumption of Lasser's Employment Agreement were not effective when the Asset Purchase Agreement was signed on December 21, 2011, as AMACS asserts. Rather, pursuant to Asset Purchase Agreement, the assignment and assumption did not take effect until the leasing period's termination. Pursuant to ACS's letter to Lasser, the Employment Agreement was terminated when the leasing period ended. Thus, when the assignment and assumption became effective, the Employment Contract was already terminated.

For this reason, we conclude that the two-year non-solicitation period, found in Section 10 of the Employment Agreement, began to run no later than March 1,

2012. As a result, the non-solicitation period ended no later than March 1, 2014. Because it restrains Lasser from engaging in the lawful activity of soliciting customers beyond the end of the non-solicitation period, Part (c) of the injunction is impermissibly broad. *See Hellenic Inv.*, 766 S.W.2d at 867 (reversing injunctive decree that impermissibly limited defendant's ability to operate lawful business enterprise); *Norton v. Integral Corp.*, 584 S.W.2d 932, 935 (Tex. Civ. App.— Austin 1979, no writ) (recognizing that an injunction is too broad if it prohibits former employee from engaging in business activities in which the employer is not engaged); *see also* Tex. R. Civ. P. 683. We hold that the trial court did not have discretion to render Part (c) of the May 28, 2014 injunctive order. *See ICON Benefit Adm'rs II, L.P. v. Abbott*, 409 S.W.3d 897, 902 (Tex. App.—Austin 2013, pet. denied) ("A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts.")

We overrule Lasser's first issue as to Parts (a) and (b) of the injunctive order but sustain the issue as to Part (c).

## C.    Entitlement to Injunctive Relief

In his second and third issues, Lasser asserts that AMACS has not proven its entitlement to injunctive relief against Lasser. Because we have held that the trial court did not have the discretion to render Part (c) of the temporary injunction, we limit our discussion of issues two and three to Parts (a) and (b) of the order. Those

23

two provisions prohibit Lasser from using or disseminating AMACS's trade secrets and confidential information.

On appeal, Lasser correctly points out that an applicant must plead and prove three specific elements to obtain a temporary injunction: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim time period. *Butnaru*, 84 S.W.3d at 204. Lasser claims that AMACS's breach of contract claim cannot support the temporary injunction because, as he alleges, there was no contract between Lasser and AMACS. For this reason, Lasser asserts that AMACS cannot show any of the required elements to obtain a temporary injunction; that is, AMACS cannot show a breach of contract claim against Lasser, a probable right to relief under that claim, or that it will suffer a probable, imminent, and irreparable injury relating to that claim.

In his briefing, Lasser does not address whether AMACS's other pleaded causes of action support Parts (a) and (b) of the temporary injunction. *See Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (requiring appellant to attack all independent bases or grounds supporting challenged judgment). In its live pleading, AMACS not only asserted a breach-of-contract claim against Lasser, it also asserted claims for misappropriation of trade secrets and conversion. The trial court's May 28, 2014

injunctive order does not expressly base the restraint of Lasser's use and dissemination of AMACS's trade secret and confidential information on AMACS's breach-of-contract claim. To the contrary, among its findings, the trial court stated in the temporary-injunction order, as follows: "The Court finds that [Lasser's] misappropriation of [AMACS's] trade secrets and confidential information will likely result in damages to [AMACS]."[5]

Courts have affirmed temporary injunctions that restrain a former employee from using or disseminating its past employer's trade secrets and confidential information based on a misappropriation of trade secrets claim.[6] *See, e.g., Hill v. McLane Co. Inc.*, No. 03–10–00293–CV, 2011 WL 56061, at *4 (Tex. App.—Austin Jan. 5, 2011, no pet.) (mem. op.); *Skinner v. DVL Holdings, L.L.C.*, No. 05–03–00785–CV, 2004 WL 113095, at *2 (Tex. App.—Dallas 2004, no pet.) (mem.

---

[5] Although the trial court's definition of "trade secret" and "confidential information" references the Employment Agreement's definition of these terms, the complete definition found in the temporary injunction is not limited to that agreement's definition. Indeed, AMACS presented evidence of what it considered to be its confidential information. For example, AMACS's CEO testified regarding what comprises AMACS's confidential information, discussing specific examples of such information. The CEO also testified that the computer files downloaded by Lasser, as reflected in Exhibit 7, contain AMACS's confidential and proprietary information.

[6] Courts have identified the following as the elements of a trade secret misappropriation claim: (1) the existence of a trade secret owned by the plaintiff; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) "use" of the trade secret; and (4) injury. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366–67 (Tex. App.—Dallas 2009, pet. denied); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied).

25

op.).  An employer is not generally entitled to an injunction preventing a former employee from soliciting the employer's clients in the absence of an enforceable agreement not to compete.  *Rugen*, 864 S.W.2d at 551.  However, a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment, even without a contract.  *Id*.  Thus, we conclude that Parts (a) and (b) of the temporary injunction, which prohibit Lasser from using or disseminating AMACS's trade secrets and confidential information, are supportable by AMACS's misappropriation of trade secrets claim, which Lasser has not challenged.  *See Hill*, 2011 WL 56061, at *4; *Skinner*, 2004 WL 113095, at *2.  We hold that Lasser has not shown that the trial court abused its discretion in rendering Parts (a) and (b) of the temporary injunction.  *See Britton*, 95 S.W.3d at 681.

We overrule Lasser's second and third issues.

## Conclusion

We modify the trial court's May 28, 2014 temporary-injunction order by deleting Part (c) of the order, which prohibits Lasser from soliciting AMACS's customers. We affirm the order, as modified.[7]

Laura Carter Higley
Justice

Panel consists of Justices Higley, Bland, and Sharp.

---

[7] *See TNT Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 25 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (recognizing that appellate court may modify an overly broad temporary injunction).