COMPUTEK COMPUTER & OFFICE SUPPLIES, INC. & Michael Williams, Individually, Appellants,

v.

Daron WALTON d/b/a OEM Supplies, Appellee.

No. 05–03–00889–CV.

Court of Appeals of Texas, Dallas.

Feb. 15, 2005.

Todd W. White, The White Law Firm, Rockwall, for appellants.

Jay R. Stucki, Hulse & Stucki, Irving, for appellee.

Before Justices MOSELEY, O'NEILL, and RICHTER.

## OPINION

Opinion by Justice MOSELEY.

Daron Walton d/b/a OEM Supplies (OEM) sued Computek Computer & Office Supplies, Inc., and Michael Williams, Computek's owner, (collectively, Computek), alleging, among other claims, that Williams used trade secrets obtained during his employment with OEM to form a competing company. The trial court found in favor of OEM on this claim and awarded it actual and exemplary damages. In addition, the trial court entered a permanent injunction against Computek. In its first issue, Computek contends that the permanent injunction is improper because it lacks specificity and is overly broad. In its second issue, Computek contends the award of joint and several exemplary damages against two defendants is improper. For the reasons

that follow, we (1) reverse the permanent injunction in part and remand it to the trial court for further proceedings, and (2) modify the permanent injunction in part. Further, we reverse the judgment of the trial court on the merits as to the joint and several award of exemplary damages and remand that issue to the trial court for further proceedings. In all other respects, the permanent injunction and judgment on the merits are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Daron Walton and Michael Williams worked as sales representatives at ABBA, which sold office supplies to businesses. Walton left ABBA and started OEM, a business that competed with ABBA. In November 2000, Walton hired Williams. Williams brought with him the contacts he established at ABBA. Williams testified that he and Walton orally agreed that Williams could take his ABBA clients with him when he left OEM. OEM used TeleMagic, a computer program, to keep track of its salespersons' contacts with clients. The information included clients' names, contact information, current and past purchase orders, quoted prices, and personal information. The TeleMagic documents were labeled as confidential and the property of OEM. In addition, Williams had purchase orders for his ABBA clients that included some of this information.

In May 2002, while he was still employed by OEM, Williams incorporated Computek to compete with OEM. In August 2002, Williams deleted all of the information from 300 to 400 client files in OEM's TeleMagic program, and removed paperwork regarding those clients, such as purchase orders, from OEM's office. Williams used some of the deleted information to start Computek. When Walton discovered the information had been delet-

ed and that client files had been removed, he fired Williams. Subsequently, OEM sued Williams for breach of a covenant not to compete, misappropriation of trade secrets, unfair competition, violation of the Texas Theft Liability Act, and conversion, and sought actual and exemplary damages and attorney's fees. OEM obtained a temporary restraining order and then a temporary injunction, which restrained Williams from taking certain actions regarding OEM clients or the information on the records Williams deleted or removed, including "[c]anvassing, soliciting, or accepting any business ... from any OEM clients" or "using OEM confidential and proprietary information or the records and files taken from OEM or that were in OEM's possession prior to [Williams] leaving employment with OEM to solicit OEM clients."

The case was tried to the court. At the close of the trial, the court orally found for OEM on the claim for misappropriation of trade secrets and awarded actual damages of $113,000, exemplary damages of $100,000, and offset these amounts by $1,500. Alternatively, the trial court found for OEM on the theft of property claim and awarded OEM $113,000 in actual damages, $1,000 additional damages pursuant to the statute, $60,000 attorney's fees, and costs of court. The court found in Computek's favor on all other claims. The trial court subsequently signed a "Judgment of the Trial on the Merits," which found for OEM on the claim for misappropriation of trade secrets and for Computek on the remainder of the claims and awarded OEM $113,000 in actual damages, $100,000 in exemplary damages, and offset these amounts by $1,500. The trial court also signed a permanent injunction. Computek filed a motion to clarify/modify injunction and judgment and for new trial, which was overruled by operation of law. This appeal timely followed.

## PERMANENT INJUNCTION

In its first issue, Computek contends the permanent injunction is improper because it lacks clarity. Computek argues the injunction fails to specify which OEM clients Computek may not contact and that it is overly broad because it prevents Computek from engaging in activities it has a lawful right to perform. Computek requests that this Court either modify the permanent injunction, *see Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 583 (Tex.App.-San Antonio 1998, pet. denied), or reverse and remand to the trial court for further proceedings. *See Kulkarni v. Braeburn Valley W. Civic Ass'n, Inc.*, 880 S.W.2d 277, 278—79 (Tex.App.-Houston [14th Dist.] 1994, no writ).

### Standard of Review and Applicable Law

Whether to grant a permanent or temporary injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ). Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Hitt v. Mabry*, 687 S.W.2d 791, 792 (Tex.App.-San Antonio 1985, no writ) (citing *Lower Nueces River Water Supply Dist. v. Live Oak County*, 312 S.W.2d 696, 701 (Tex.Civ.App.-San Antonio 1958, writ ref'd n.r.e.)).

However, "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained...." Tex.R. Civ. P. 683. An injunction must be as definite, clear,

and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. *Villalobos v. Holguin,* 146 Tex. 474, 480, 208 S.W.2d 871, 875 (1948); *Hellenic Inv., Inc. v. Kroger Co.,* 766 S.W.2d 861, 866 (Tex.App.-Houston [1st Dist.] 1989, no writ). Persons seeking the extraordinary remedy of injunction must be specific in pleading the relief sought, and the courts are without authority to grant relief beyond that so specified. *Hitt,* 687 S.W.2d at 795.

 An injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *Id.* However, an injunction must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. *Id.* at 796. Moreover, where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint. *Hellenic Inv., Inc.,* 766 S.W.2d at 867. Thus, the entry of an injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id.*

## *Discussion*

### 1. Whether the permanent injunction lacks specificity

Numbered paragraphs one and two of the permanent injunction enjoin Computek

from doing business, or authorizing anyone else to do business, with any OEM client not listed on Attachment A or that was a new account set up while Williams worked for OEM. Attachment A is a list of 184 clients that Williams brought from ABBA to OEM that Computek may contact. However, the clients Computek may not contact, which is the purpose of paragraphs one and two, are not named or identified. Paragraph three enjoins Computek from advising OEM clients to cancel their business with OEM. It refers to those who were OEM clients as of October 16, 2002 (two days before the request for injunction was filed and the temporary restraining order was signed) and new accounts set up while Williams worked for OEM; however, it does not name or identify those clients. Paragraphs four and five enjoin Computek from disclosing or using the non-ABBA information and files Williams took from OEM or that OEM possessed before Williams left OEM's employment; those paragraphs do not specifically list the information and files Computek may not use or disclose.

Computek argues that the injunction lacks specificity because paragraphs one through five seek to prevent Computek from doing business with OEM clients, but the injunction does not include a list of OEM clients.[1] Rather, because it includes a list of clients Computek may contact, but not a list of those it must not contact,

---

1. The permanent injunction provides that the defendants are jointly and severally restrained from:

 1. Canvassing, soliciting, or accepting any business in his own name or for any other individual, partnership, corporation, or other business entity, with the exception of OEM, from any OEM clients that are not listed on Attachment A, attached hereto and incorporated by reference, or were new ac-

counts set up while Defendants worked for Plaintiff; and

 2. Giving any person, firm, partnership, or corporation or retaining for themselves the right to canvas, solicit, or accept any business for any other service agency, from any OEM clients that are not listed on Attachment A or were new accounts set up while Defendants worked for Plaintiff; and

 3. Directly or indirectly requesting or advising any OEM clients, as of 10/16/02, or

222

Computek contends that it cannot know whether a contact is an OEM client.

■ OEM responds that the first paragraph clearly enjoins Computek from contacting those OEM clients existing at the time the injunction became effective. Further, OEM responds that the first paragraph should be reformed to add language that it refers to clients of OEM as of October 16, 2002, or that were new accounts set up while Williams worked for OEM. Although these dates narrow the scope of OEM clients included in the injunction, the dates alone do not identify the OEM clients who are off-limits to Computek. Accordingly, we agree with Computek that these paragraphs enjoin Computek from taking specific actions involving specific OEM clients who are not identified or listed in the permanent injunction, and from using or disclosing information and files that are not specifically identified in the permanent injunction. Because these OEM clients are not specifically named, we agree with Computek that it must ask every non-ABBA contact it makes whether it was an OEM client during the relevant times, and that question may be construed as "canvassing" or "soliciting," and thus a violation of the permanent injunction. We agree with Computek

that the permanent injunction lacks specificity in this regard.

■ OEM argues that Computek has the information as to the clients it may not contact "as demonstrated by their repeated contacts of those clients." OEM's brief contains no record reference to support this statement, and no testimony at the trial referred to Computek's violation of substantially similar provisions of the temporary injunction. However, even if the trial court had expressly found Computek had such information, rule 683 provides that the order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and *not by reference to the complaint or any other document,* the act or acts sought to be restrained." Tex.R. Civ. P. 683 (emphasis added). Thus, the injunction itself must provide the specific information as to the off-limits clients, without inferences or conclusions, or, in this case, implied references to other records Computek might have. *See Villalobos,* 146 Tex. at 480, 208 S.W.2d at 875; *Hellenic Inv., Inc.,* 766 S.W.2d at 866; *see also Ex parte Slavin,* 412 S.W.2d 43, 44—45 (Tex.1967) (comparing degree of certainty in contempt orders and injunctions). Thus, we

were new accounts set up while Defendants worked for Plaintiff, to change, withdraw, curtail, or cancel their business with OEM; and
4. Directly or indirectly disclosing to any other person, firm, or corporation the contents of the information or files taken from OEM or that were in OEM's possession prior to Defendants leaving employment with OEM with the exception the Defendants may use the information contained in Defendants' paper work brought by Defendants from A[BBA]; and
5. Directly or indirectly using OEM·confidential and proprietary information or the records and files taken from OEM or that were in OEM's possession prior to Defendants leaving employment with OEM to sol-

icit OEM clients with the exception the Defendants may use the information contained in Defendants' paper work brought by Defendants from A[BBA]. . . .
6. Inducing or attempting to influence any employee of OEM to wrongfully convert confidential and proprietary information from the client customer files belonging to OEM in selling products to OEM clients; and
7. Removing or destroying any files, or copies of files, including but not limited to Defendants' computer or computer files.
Attachment A is titled "Michael Williams ABBA Client List." It contains the names of 184 clients that the evidence shows Williams brought to OEM from ABBA.

cannot agree with OEM that the lack of specificity as to OEM clients is cured by any knowledge Computek may have outside the permanent injunction.

## 2. Whether the permanent injunction is overly broad

■ Computek argues that the permanent injunction is "overbroad" because it prevents lawful activities. Specifically, Computek argues that paragraph seven, which bars Computek from "[r]emoving or destroying any files, or copies of files, including but not limited to Defendants' computer or computer files," prevents Computek from removing or destroying any files on its computers, including those that were unrelated to OEM or the litigation. Computek argues that it has the legal right to dispose of its own records or files that are "routine," such as deleting computer files no longer in use or throwing away paper records of old sales leads. *See, e.g., Hitt,* 687 S.W.2d at 796 (concluding injunction was too broad because it barred all school board members and employees from using telephone conferences or informal meetings to discuss public business when court of appeals limited acts enjoined to those of board members in arriving at decisions involving public business or policy affecting district).

OEM replies that, although paragraph seven does not refer specifically to OEM, the context of the injunction shows clearly that it refers only to files specifically related to OEM. OEM refers to the preceding six paragraphs that clearly refer to activities or property of OEM.[2] However, those paragraphs are quite detailed and specifically limit Computek's external business activities in relation to OEM. In contrast, paragraph seven refers to Computek's internal procedures, without any limit. We conclude that the injunction enjoins activi-

ties Computek has a legal right to perform, such as deleting records and files that have nothing to do with OEM, and thus that the injunction is too broad.

Because we agree that the trial court abused its discretion by entering a permanent injunction that lacks specificity and is overly broad, we resolve Computek's first issue in its favor.

## AWARD OF EXEMPLARY DAMAGES

■ In its second issue, Computek contends the award of exemplary damages jointly and severally against Williams and the corporation was improper because section 41.006 of the civil practice and remedies code requires that any award of exemplary damages be specific to each defendant.

*Applicable Law and Standard of Review*

Section 41.006 of the civil practice and remedies code provides for an "award specific to defendant":

> In any action in which there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.006 (Vernon 1997). When interpreting statutes we try to give effect to legislative intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex. 1999). "Legislative intent remains the polestar of statutory construction." *Id.* (quoting *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995)). However, a court construes a statute "first, by looking to the plain and common meaning of the statute's words." *Id.* (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors,* 966

---

2. Paragraph six is not at issue in this appeal.

It is quoted in note 1 *supra.*

S.W.2d 482, 484 (Tex.1998)). If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *Id.* Statutory construction is a question of law for the court to decide. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). We review legal questions de novo. *Id.*

This case accrued in 2002, after section 41.006 became applicable to intentional torts by virtue of the 1995 amendment of section 41.002(a).[3] By its plain terms, section 41.006 provides that there is no joint and several liability for exemplary damages. Because it is unambiguous, we construe section 41.006 as written and conclude that it requires that any award of exemplary damages here must be specific as to Williams and to Computek, and each defendant is liable only for the amount of the award made against that defendant. *See Fitzgerald*, 996 S.W.2d at 865.

OEM argues that an award of joint and several exemplary damages is proper against closely related defendants, such as the corporation and its president in this case. To support this argument, OEM relies on *U.S. Sporting Products v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 221—22 (Tex.App.-Waco 1993, writ denied); *Transfer Products, Inc. v. Texpar Energy, Inc.*, 788 S.W.2d 713, 717 (Tex. App.-Corpus Christi 1990, no writ); and *Norton Refrigerated Express, Inc. v. Ritter Bros. Co.*, 552 S.W.2d 910, 913 (Tex. Civ.App.-Texarkana 1977, writ ref'd n.r.e.). However, those cases accrued before the statutory rule for specific allocation became applicable to intentional torts. As those opinions make clear, the statutory requirement for specific allocation of ex-

emplary damages did not apply to those cases. Therefore, those opinions applied the common law rule that exemplary damage awards must be specifically allocated, which included a common law exception for closely related defendants. *See Bradford v. Vento*, 997 S.W.2d 713, 741 & n. 17 (Tex.App.-Corpus Christi 1999) (applying common law specific allocation rule when statute inapplicable), *aff'd in part & rev'd in part on other grounds*, 48 S.W.3d 749 (Tex.2001); *Warner Communications, Inc. v. Keller*, 888 S.W.2d 586, 599 (Tex.App.-El Paso 1994) (same), *rev'd on other grounds sub nom. Tex. Builders v. Keller*, 928 S.W.2d 479 (Tex.1996) (per curiam).

Because we conclude the trial court erred in awarding joint and several exemplary damages, we resolve Computek's second issue in its favor.

## CONCLUSION

Because of our disposition of Computek's first issue, we (1) reverse paragraphs one through five of the permanent injunction and remand them to the trial court for further proceedings; and (2) modify paragraph seven of the permanent injunction to read: "Removing or destroying any files, or copies of files, including but not limited to Defendants' computer or computer files, relating to OEM."

Because of our disposition of Computek's second issue, we reverse the trial court's joint and several award of exemplary damages in the "Judgment of the Trial on the Merits" and remand the issue of exemplary damages to the trial court to determine whether to award exemplary damages as to any specific defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.006.

---

**3.** The applicable statute was renumbered from section 41.005 to section 41.006 in 1995. *See* Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 111 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.006).

In all other respects, we affirm the permanent injunction and the "Judgment of the Trial on the Merits."