**Opinion issued August 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00717-CV

———————————

### JAIMIE MARTINEZ AND JENNIE MARTINEZ, Appellants

### V.

### JBIC, INC. DOING BUSINESS AS JAMAICA BEACH IMPROVEMENT COMMITTEE, Appellee

---

On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Case No. 14-CV-0201

---

## MEMORANDUM OPINION

JBIC, Inc., which does business as the Jamaica Beach Improvement Committee and enforces the Jamaica Beach subdivision's restrictive covenants, sued Jaimie and Jennie Martinez, who own property in the subdivision, for violations of restrictive covenants. JBIC obtained an order permitting substituted

service of the citation and petition. When the Martinezes did not answer the suit, the trial court entered a default judgment against them. The judgment contains various injunctions regarding the Martinezes' use and upkeep of their property.

In this restricted appeal, the Martinezes contend that (1) the trial court did not have jurisdiction to enter judgment against them because the affidavit submitted in support of JBIC's motion for substituted service failed to comply with Texas Rule of Civil Procedure 106(b) in that it did not contain a specific averment that the address listed in the affidavit was the Martinezes' usual place of abode or where they probably could be found and (2) the injunction failed to adequately inform them of the acts that it prohibits and, thus, is impermissibly vague in violation of Civil Procedure Rule 683.

We reverse.

## Background

Jaimie and Jennie Martinez own property in the Jamaica Beach subdivision in Galveston. Their property is subject to various restrictive covenants. Many of the properties in the subdivision—including the Martinezes'—were damaged by Hurricane Ike in 2008. JBIC, which enforced the subdivision's restrictive covenants, notified the Martinezes in 2012 that they needed to address various deficiencies on their property to bring it into compliance with the restrictive covenants. Specifically, they needed to (1) repair or replace the pilings; (2) add all

2

necessary handrails to the outside stairs on the residential house; (3) add all necessary railings to the entire upstairs deck; (4) repair or replace the siding on the house; (5) repair or replace the roof; (6) "paint the entire residential house on the Lot to preserve the attractiveness thereof"; (7) resolve the temporary connection of electricity to the home; (8) "remove all of the materials and equipment which are stored on the Lot in a manner that is not for normal residential requirements"; and (9) "abate all of the characteristics of the residential house on the Lot that cause it to be an annoyance or a nuisance to the neighborhood." When the property was not brought into compliance, JBIC filed suit against the Martinezes.

JBIC was unable to obtain service on the Martinezes and moved for substituted service. In support of its motion, it attached affidavits from a process server detailing his past attempts to effect service at 5423 Timbers Trail Drive, Humble, TX 77346 and listing the license plate numbers for each vehicle observed at the residence on each attempted service. JBIC also attached various documents to the affidavits and motion indicating that the Martinezes reside at that address and that the license plate numbers observed there are assigned to vehicles registered to the Martinezes. The trial court granted the motion, and JBIC served the Martinezes by substituted service at the Humble address by leaving a copy of the citation and petition with a person over the age of 16.

When the Martinezes failed to answer suit, a default judgment was entered against them. The order permanently enjoins the Martinezes as follows:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that . . . Defendants, JAIME MARTINEZ and JENNIE MARTINEZ . . . be, and hereby are, commanded to desist and refrain from, directly or indirectly, (a) failing to keep in good repair, and failing to keep painted when necessary to preserve the attractiveness of, the residential house located on said Lot, (b) storing material and equipment on said Lot except for normal residential requirements, and (c) carrying on a noxious or offensive activity upon said Lot; and that Defendant, JAIME MARTINEZ and JENNIE MARTINEZ . . . be, and hereby are, mandated to (1) promptly and properly repair, keep in good repair, paint to preserve the attractiveness of, and keep painted when necessary to preserve the attractiveness of, the residential house located on said Lot, (2) promptly cease to use said Lot for storage of material and equipment except for normal residential requirements, and (3) promptly abate the noxious or offensive activity carried on upon said Lot.

Through a restricted appeal, the Martinezes challenge both the substituted service and the specificity of the injunction.

## Specificity of Injunction

In their second issue, the Martinezes argue that the trial court erred by issuing an injunction against them that lacks the necessary specificity and precision to be enforced by contempt.

### A.    Standard of review

The standard of review when a trial court grants a permanent injunction is whether the trial court abused its discretion. *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied);

*Morris v. Collins*, 881 S.W.2d 138, 139 (Tex. App.—Houston [1st Dist.] 1994, writ denied). A trial court abuses its discretion if it (1) acts arbitrarily and unreasonably without reference to guiding rules or principles or (2) misapplies the law to the established facts of the case. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 791 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

**B.      Specificity requirement for permanent injunction**

A person who violates a trial court's injunction may be held in contempt; therefore, the language enjoining the party should be clear so that the party subjected to the prohibitions is not misled. *See* TEX. R. CIV. P. 692 (permitting trial court to have violator arrested and committed to jail without bail); *Ex parte Padron,* 565 S.W.2d 921, 924 (Tex. 1978) ("Civil contempt in Texas is the process by which a court exerts its judicial authority to compel obedience to some order of the court."); *In re Coppock*, 277 S.W.3d 417, 419 (Tex. 2009).

Civil Procedure Rule 683 contains the specificity requirement: "Every order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." TEX. R. CIV. P. 683. The rule's purpose is to ensure that enjoined parties are given adequate notice of the acts they are

5

prohibited from doing. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552

(Tex. App.—Dallas 1993, no writ). As the Texas Supreme Court has explained:

> An injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702

(Tex. 1956).

Thus, for example, an injunction prohibiting a homeowner from "playing

excessively loud music that can be heard outside of the dwelling located on the

Property" is not impermissibly vague because the common meaning of

"excessively loud"—which the appellate court stated meant "so loud it exceeds

what is usual, proper, necessary, or normal"—provides sufficient guidance

regarding which acts are prohibited. *Webb v. Glenbrook Owners Ass'n, Inc.*, 298

S.W.3d 374, 388 (Tex. App.—Dallas 2009, no pet.). However, another provision

in that same injunction prohibiting the property owner from playing "obscene

music" was held to be impermissibly vague. *See id.* at 388–89. The court stated

that the term "obscene" is "highly subjective" and, as a result, held that the

injunction "lacks sufficient specificity required for an enforceable order of the court." *Id.*

Other examples of vague injunctions include prohibitions against contacting clients or selling products to individuals without adequately identifying the clients and individuals who may not be contacted. *See Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 222–23 (Tex. App.—Dallas 2005, no pet.) (injunction failed to specify clients company could not contact); *Heat Shrink Innovations, LLC v. Med. Extrusion Technologies-Texas, Inc.*, No. 02-12-00512-CV, 2014 WL 5307191 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied) (injunction enjoined sales to "Farm" and "Calypso" without providing any further clues to their identities). Additionally, an injunction that sought to enjoin activity related to a roadway but failed to sufficiently describe the particular roadway at issue was held unenforceable. *See Wood v. Walker*, 279 S.W.3d 705, 714 (Tex. App.—Amarillo 2007, no pet.).

## C.   JBIC's injunction against the Martinezes

The three Jamaica Beach restrictive covenants at issue provide as follows:

7.   No noxious or offensive activity shall be carried on upon any lot nor shall anything be done thereon which may be or may become an annoyance or a nuisance to the neighborhood.

.  .  .  .

11.   The owners or occupants of all lots in this subdivision shall . . . in no event use any lot for storage of material and equipment except for normal residential requirements . . . .

7

. . . .

15. All residences and other buildings must be kept in good repair, and must be painted when necessary to preserve the attractiveness thereof.

JBIC informed the Martinezes, by letter, that to comply with the restrictive covenants they needed to: (1) repair or replace the pilings; (2) add all necessary handrails to the outside stairs on the residential house; (3) add all necessary railings to the entire upstairs deck; (4) repair or replace the siding on the house; (5) repair or replace the roof; (6) "paint the entire residential house on the Lot to preserve the attractiveness thereof"; (7) resolve the temporary connection of electricity to the home; (8) "remove all of the materials and equipment which are stored on the Lot in a manner that is not for normal residential requirements"; and (9) "abate all of the characteristics of the residential house on the Lot that cause it to be an annoyance or a nuisance to the neighborhood." These same deficiencies were included in JBIC's petition without additional detail.

The permanent injunction issued by the court following default, requires the Martinezes to abide by covenants 7, 11, and 15. These requirements are stated both as prohibitions and mandates. First, the injunction prohibits the Martinezes from

(a) failing to keep in good repair, and failing to keep painted when necessary to preserve the attractiveness of the residential house located on said Lot, (b) storing material and equipment on said Lot except for normal residential requirements, and (c) carrying on a noxious or offensive activity upon said Lot . . . .

8

It then requires that they

> (1) promptly and properly repair, keep in good repair, paint to preserve the attractiveness of, and keep painted when necessary to preserve the attractiveness of, the residential house located on said Lot, (2) promptly cease to use said Lot for storage of material and equipment except for normal residential requirements, and (3) promptly abate the noxious or offensive activity carried on upon said Lot.

## D.     The injunction is vague

The Martinezes contend that the injunction is impermissibly vague because it fails to adequately inform them of the acts for which they are subject to contempt for violation. JBIC responds that the injunction is not vague because it tracks the language of the subdivision's restrictive covenants, to which the Martinezes knowingly agreed to be bound. JBIC points out that the covenants have been in effect since 1964, without amendment, and, thus, are "clear and unambiguous . . . guidelines to property owners" in the Jamaica Beach subdivision.

To the extent the covenants are not specific, JBIC asserts that the nine deficiencies listed in its petition and above "describe[ ] specific acts by Defendants that have resulted in violations of the deed restrictions" and, therefore, adequately "define what actions are required to comply with the restrictions and have a definite and certain legal meaning for the purpose of notice to Defendants." We do not agree for several reasons.

9

First, incorporation of the restrictive-covenant terms into the injunction does not insulate the injunction from a vagueness challenge. *See Johnson v. Linton*, 491 S.W.2d 189, 196 (Tex. App.—Dallas 1973, no writ) (holding that phrases used in injunction which were same phrases used in restrictive covenants—including that structures "shall not exceed one and one-half story in height," "all garages must be not less than two car size," and "conformity and harmony of external design with existing structures in the subdivision" is required—were too vague and uncertain to meet requirements of Rule 683).

Second, the specificity required of the order cannot be met by reference to another more detailed document. *See* TEX. R. CIV. P. 683 (requiring injunction order to "describe in reasonable detail and *not by reference to the complaint or other document*, the act or acts sought to be restrained . . . ." (emphasis added)); *Computek*, 156 S.W.3d at 222 ("[T]he injunction itself must provide the specific information . . . without inferences or conclusion, or, in this case, implied references to other records [the enjoined party] might have.").

And third, even if JBIC could refer back to these documents to find the necessary specificity, the documents did not describe the materials or equipment being stored on the Martinezes' property that JBIC viewed as "not for normal residential requirements." Nor did they define the activities taking place on the Martinezes' property that JBIC considered "noxious or offensive."

Because the order, itself, is required to specifically describe the acts sought to be restrained, we consider each of the three provisions in the Martinezes' permanent injunction to determine whether they meet the requirements of Rule 683.

### 1.    Painting to preserve attractiveness

The injunction incorporates the language of covenant number 15 to require the Martinezes to keep their home in good repair and to "keep [it] painted when necessary to preserve the attractiveness of the residential house."

An injunction "must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Lasser v. Amistco Separation Prods., Inc.*, No. 01-13-00690-CV, 2014 WL 527539, at *4 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.) (mem. op.) (quoting *Drew v. Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 156 (Tex. App.—Austin 1998, pet. denied)); *Hellenic Inv., Inc. v. Kroger Co.*, 766 S.W.2d 861, 866 (Tex. App.—Houston [1st Dist.] 1989, no writ). An injunction order "should not be framed so broadly as to prohibit the enjoyment of lawful rights." *Hellenic Inv., Inc.*, 766 S.W.2d at 866.

Under these guidelines, applying a subjective "attractiveness" standard to a requirement that homeowners paint their home is impermissibly vague. *See Webb*, 298 S.W.3d at 388–89 (holding that prohibition against playing "obscene music" is

11

impermissibly vague because obscenity is "highly subjective."). This injunction could subject the Martinezes to contempt based on a newly painted home under an allegation that their color choice detracted from the subjective "attractiveness" of the home.

We conclude that this injunction is impermissibly vague.

## 2. Storing non-residential materials

The next injunction incorporates language from covenant 11 and prohibits the Martinezes from storing materials and equipment on their property except "normal residential requirements."

We give restrictive covenants' words and phrases their commonly accepted meaning. *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "Residential" is defined as "of or connected with residence" or "characterized by, or suitable for residences, or homes." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1236 (5th ed. 2014). "Normal" means "conforming with or constituting an accepted standard, model, or pattern . . . ." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 998. Black's Law Dictionary states that "normal" "describes not just forces that are constantly and habitually operating but also forces that operate periodically or with some degree of frequency. In this sense, its common antonyms are *unusual* and *extraordinary*." BLACK'S LAW DICTIONARY 1160 (9th ed. 2004).

Nowhere in the order does the trial court provide the Martinezes with any guidance regarding what they have stored that violates this provision. Again, JBIC refers back to specific deficiencies listed in its petition but, as discussed earlier, reference to another pleading does not supply the definiteness and specificity required by Rule 683. *See Computek*, 156 S.W.3d at 222. Even if it did, the petition does not list which items have been stored on the property that are not properly considered "normal residential" materials, particularly in the context of an on-going repair project.

We conclude that this broadly worded injunction is impermissibly vague and fails to inform the Martinezes of the acts it prohibits and for which they could be subject to contempt.

### 3. Noxious or offensive activities

The final injunction incorporates language from covenant 7 and prohibits the Martinezes from "carrying on a noxious or offensive activity" on their property. "Noxious" means "harmful to the health" and "injurious." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1002; BLACK'S LAW DICTIONARY 1170. "Injurious" means "harmful; tending to injury." BLACK'S LAW DICTIONARY 856. It also has been defined as "offensive or abusive." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 749. "Offensive" means "unpleasant or disagreeable to the sense; obnoxious." BLACK'S LAW DICTIONARY 1188. Another definition is "giving

painful or unpleasant sensations." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 861 (11th ed. 2003).

Again, the order fails to provide the Martinezes with any guidance regarding the acts that would violate this particular injunction. JBIC may not refer back to another pleading to provide the specificity required under Rule 683. *See Computek*, 156 S.W.3d at 222. But even if it could, the petition does not detail which activities have been considered noxious or offensive in the past to guide the Martinezes' future conduct. We conclude that this injunction provision is impermissibly vague and fails to inform the Martinezes of the acts it prohibits and for which they could be subject to contempt.

Having found that all three injunction provisions are impermissibly vague, we sustain the Martinezes' second issue. Because the judgment against them is being reversed and the Martinezes have appeared, we do not address their first issue. *See McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965); *see also* TEX. R. CIV. P. 123.

## Conclusion

We reverse the trial court's injunction and remand the cause for further proceedings consistent with this opinion.

14

Harvey Brown
Justice

Panel consists of Justices Jennings, Bland, and Brown.