**MODIFY in Part, REVERSE in Part, REMAND and AFFIRM; Opinion Filed June 28, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01289-CV

**CRYSTAL MCCASKILL AND SUNTRONIC DALLAS, LLC, Appellants**

**V.**

**NATIONAL CIRCUIT ASSEMBLY D/B/A NCA, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-09804**

## MEMORANDUM OPINION
Before Justices Bridges, Brown, and Schenck
Opinion by Justice Brown

In this interlocutory appeal, appellants Crystal McCaskill and Suntronic Dallas, LLC appeal the trial court's order granting a temporary injunction. Appellants contend the trial court's order lacks the specificity required by rule of civil procedure 683. We agree in part and reverse the injunction in part.

In August 2017, National Circuit Assembly d/b/a NCA sued appellants. According to its pleadings, NCA "manufactures and assembles electronic products, parts, and components for a variety of industries." McCaskill worked for NCA as a Program Manager from 2012 to July 2017. In that capacity, McCaskill was the primary contact for assigned customers and had access to confidential information, including pricing data and customer lists. NCA alleged that its business

is "highly competitive and extremely price-sensitive." It further alleged that McCaskill is bound by a Nondisclosure Agreement. The Nondisclosure Agreement McCaskill signed provided:

1. **Confidential Information**. Employee acknowledges and agrees that in connection with his or her employment with [NCA], Employee may have access to or possession of the Company's proprietary and/or confidential information (the "Confidential Information"), which includes, but is not limited to:

   a. Executive summaries, business plan(s), market research, financial statements, reports, and other materials or records of a proprietary nature;

   b. Any and all information, documents, photographs, work product, and drawings pertaining to strategic or tactical considerations, including, without limitation, any and all plans, memoranda, presentations, code, formulas, diagrams, charts, or other documents which discuss the general or specific corporate strategy of the Company or any of its officer or directors, and any drawings or work product associated with the Company;

   c. Information and materials relating to developing, purchasing, pricing, marketing and accounting, including, but not limited to, marketing plans, sales data, unpublished promotional materials, cost and pricing information, customer lists, customer names and customer contact information;

   d. Any and all information concerning current, future or proposed products and services, including, without limitation, computer or mobile application code, drawings, specifications, designs, notebook entries, technical notes and graphs, computer print-outs, technical memoranda and correspondence, product development agreements, and related agreements;

   e. Information of the type described, but not specifically set forth, above which are treated as confidential information by the Company, whether or not owned or developed by them.

The agreement required McCaskill to maintain all confidential information in the strictest confidence. It also contained a covenant not to compete, by which McCaskill agreed, for a period of two years following the termination of her employment at NCA, not to provide products or services of the type provided by NCA to "any Person . . . which is then engaged within the Territory in a business similar to [NCA's] "Business" and not to solicit NCA's customers.

NCA alleged McCaskill violated the agreement by immediately going to work for NCA's direct competitor Suntronic, by using NCA's confidential information, and by soliciting NCA's

–2–

customers and clients. NCA asserted claims for breach of contract against McCaskill, tortious interference with a contract against Suntronic, and unfair competition and misappropriation of trade secrets and civil conspiracy against both appellants. NCA's petition included applications for temporary and permanent injunctions, by which NCA sought to stop McCaskill's alleged violations of the agreement. In addition, NCA asked that McCaskill be prohibited from working for Suntronic in any capacity.

NCA's request for a temporary injunction was first heard before an associate judge at an evidentiary hearing that took place over two days. The associate judge heard testimony from several witnesses, including McCaskill, and numerous exhibits were admitted into evidence. The associate judge issued an order granting NCA's application for temporary injunction. In paragraph 21 of the order, the associate judge enjoined appellants from:

(i)     Using, misappropriating, or disclosing NCA's confidential information;

(ii)    soliciting or contacting any client or customer of NCA that McCaskill interacted with as a client or customer from July 2012 to July 27, 2017, for a period of two years from July 27, 2017;

(iii)   soliciting or contacting any client or customer of NCA of whom McCaskill retained confidential information, for a period of two years from July 27, 2017; or

(iv)    allowing Defendant McCaskill to work for Suntronic, a direct competitor of NCA, in a capacity where McCaskill would potentially be using or accessing NCA's confidential information, including but not limited to NCA's customer lists, NCA's pricing information, and information relating to NCA's costs for materials, for a period of two years from July 27, 2017.

The trial court adopted the associate judge's order. The case is set for trial on October 22, 2018.

In two issues, appellants contend the trial court's order granting the temporary injunction lacks the specificity required by rule 683. In their first issue, appellants complain that "confidential information" as used in paragraph 21 is not defined with enough specificity to give appellants notice of the documents they are restrained from using, the customers they are prohibited from soliciting, and the positions McCaskill is prohibited from holding at Suntronic. In their second

issue, appellants complain that the trial court's order prohibits them from soliciting NCA's clients or customers without specifically naming, identifying, or referencing a list of the prohibited customers.[1]

Every order granting an injunction must be specific in its terms and describe in reasonable detail, and not by reference to the complaint or other document, the acts sought to be restrained. TEX. R. CIV. P. 683; *Lagos v. Plano Economic Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.— Dallas 2012, no pet.). The purpose of rule 683's specificity requirement is to ensure that parties are adequately informed of the acts they are enjoined from doing and the reasons for the injunction. *Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 WL 836775, at *5 (Tex. App.— Dallas Mar. 3, 2016, no pet.) (mem. op.). An injunction must be as definite, clear, and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956). But it must be in broad enough terms to prevent repetition of the evil sought to be stopped. *Id.* A trial court abuses its discretion by issuing a temporary injunction order that does not comply with the requirements of rule 683. *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.).

Appellants first contend that the term "confidential information" as used in paragraph 21, subsections (i), (iii), and (iv), is not specific enough to give them notice of the prohibited conduct. Appellants acknowledge that paragraph 3 of the order contains the definition of "confidential information" found in the Nondisclosure Agreement and that definition contains some very specific language. But they complain that the term as used in paragraph 21 is not capitalized as in

---

[1] Citing cases from two other courts of appeals, NCA contends appellants have not preserved their complaints about the specificity of the temporary injunction order because they did not raise them in the trial court. This Court, however, has held that a party may raise the issue of whether a temporary injunction complies with rule 683 for the first time on appeal. *See Graff v. Nat'l Recovery Sys., Ltd.*, No. 05-07-01405-CV, 2008 WL 484282, at *1 (Tex. App.—Dallas Feb. 25, 2008, no pet.) (mem. op.).

paragraph 3 and that paragraph 21 does not incorporate or refer back to the paragraph 3 definition. They also assert that even if paragraph 21 incorporated the paragraph 3 definition, that definition contained some generic terms and was not limited to the listed items. Appellants rely on this Court's opinion in *Ramirez v. Ignite Holdings, Ltd.*, No. 05-12-01024-CV, 2013 WL 4568365 (Tex. App.—Dallas Aug. 26, 2013, no pet.) (mem. op.).

In *Ramirez*, the injunction enjoined the appellants from "possessing, disclosing to any third party, or using for their own benefit . . . any of Ignite's or Stream Energy's Proprietary Information/Trade Secrets (including but not limited to proprietary information, confidential information, training materials, templates, or sales or customer lists)." *Id.* at *2. The term "Proprietary Information/Trade Secrets" was defined earlier in the injunction as "valuable business, training, and sales techniques, methods, forms, materials, guides, lists, downline associate and customer lists, including personal identifying information, and other confidential and proprietary information as discussed above." *Id.* We noted that the term "Proprietary Information/Trade Secrets" encompassed many categories of materials, some fairly specific and some broad and general. We concluded that the provision at issue was not specific enough to pass muster under rule 683. *Id.* at *4. It did not define "Proprietary Information/Trade Secrets" with enough detail to give the appellants adequate notice of the acts they are restrained from doing. *Id.*

The temporary injunction in this case provides greater detail about what constitutes confidential information. Reading the court's order as a whole, it is clear that "confidential information" as used in paragraph 21 is to have the meaning ascribed to it in paragraph 3, which sets out the pertinent terms of the parties' agreement. The definition in paragraph 3 contains five subparts and is much more specific than the definition in *Ramirez*. It includes specific terms like "computer or mobile application code" and "unpublished promotional materials." And when less specific terms are used, there is more context given for them. For example, the order includes

"Information and materials relating to developing, purchasing, pricing, marketing and accounting" and give examples such as "cost and pricing information." Also by way of example, the order lists "information, documents . . . pertaining to strategic or tactical considerations." Further, the injunction is not impermissibly vague merely because it contains phrases such as "including but not limited to." *See Lasser v. Amistco Separation Prods., Inc.*, No. 01-14-00432-CV, 2014 WL 4952501, at *6 (Tex. App.—Houston [1st Dist.] Oct. 2, 2014, no pet.) (mem. op.); *see also Bellefeuille v. Equine Sports Medicine & Surgery, Weatherford Div., PLLC*, No. 02-15-00268-CV, 2016 WL 1163364, at *7 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.) (mem. op.). An injunction need not specifically define every item comprising confidential information. *Lasser*, 2014 WL 4952501, at *6. For added clarity, we will modify the trial court's order to specify in paragraph 21 that "confidential information" has the definition set out in paragraph 3. We sustain appellants' first issue to the extent we make this modification. In all other respects, the issue is overruled.

We turn to appellants' second issue in which they complain of the order's failure to specifically identify the NCA clients or customers whom appellants are prohibited from soliciting or contacting. Paragraph 21(ii) enjoins appellants from soliciting or contacting "any client or customer of NCA that McCaskill interacted with as a client or customer from July 2012 to July 27, 2017." Paragraph 21(iii) enjoins appellants from soliciting or contacting "any client or customer of NCA of whom McCaskill retained confidential information." Appellants contend the order needs to name the clients or customers or at least reference a list of prohibited customers.

In *Computek Computer & Office Supplies, Inc. v. Walton*, this Court considered whether an injunction that failed to name the clients Computek was prohibited from contacting complied with rule 683. 156 S.W.3d 217 (Tex. App.—Dallas 2005, no pet.). The injunction in that case enjoined Computek from doing business or authorizing anyone else to do business with any client

of another business not listed on an attachment to the order. While the clients Computek could contact were identified, the clients it could not contact were not named or identified. *Id.* at 221. We determined that because the injunction itself did not provide the specific information as to the off-limits clients, without inferences or conclusions, the trial court's injunction lacked the required specificity. *Id.* at 222–23.

NCA maintains that the injunction in this case is sufficiently specific because it states clients or customers "that McCaskill interacted with as a client or customer" and "of whom McCaskill retained confidential information." NCA asserts this language put appellants "on notice of exactly who they many not contact by restricting those customers to clients McCaskill would be intimately familiar with." But this language requires inferences or conclusions to be drawn in order to determine whom appellants may not contact. As in *Computek*, the injunction itself does not provide the specific information about who the off-limits clients and customers are, and the lack of specificity cannot be cured by any knowledge McCaskill may have outside the injunction. *See id.*; *see also Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 553 (Tex. App.—Dallas 1993, no writ) (injunction order that prohibits party from soliciting customers listed in sealed exhibits admitted into evidence at injunction hearing did not violate rule 683). NCA relies on a Waco court of appeals case, which in turn relies on a case from this Court, for the proposition that an injunction need not identify the clients by name because it is reasonable to presume the employee is sufficiently familiar with the customers' identities to avoid violating the injunction. *See Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *4 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.); *see also Safeguard Bus. Sys, Inc. v. Schaffer*, 822 S.W.2d 640, 644 (Tex. App.—Dallas 1991, no writ). These cases are factually distinguishable because the only party enjoined from contacting customers was the employee. In this case, the employee McCaskill is not the only party enjoined from contacting NCA's clients; Suntronic is as well and cannot be

presumed to have knowledge of who McCaskill interacted with as a client at NCA. We conclude that in failing to sufficiently identify the off-limits customers or clients, the order lacks the specificity required by rule 683.

Appellants contend that the injunction is void and the proper remedy is to dissolve it. In *Computek*, this Court reversed the portion of the order that lacked specificity and remanded to the trial court for further proceedings. *See Computek*, 156 S.W.3d at 224. We find it appropriate to do the same here. We sustain appellants' second issue.

We modify paragraph 21(i) of the trial court's order to include, immediately following "NCA's confidential information," the phrase "as defined above in paragraph 3." We reverse paragraph 21(ii) and (iii) of the order and remand for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's order.


/Ada Brown/
ADA BROWN
JUSTICE


171289F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CRYSTAL MCCASKILL AND
SUNTRONIC DALLAS. LLC, Appellants

No. 05-17-01289-CV      V.

NATIONAL CIRCUIT ASSEMBLY
D/B/A NCA, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-09804.
Opinion delivered by Justice Brown,
Justices Bridges and Schenck participating.

In accordance with this Court's opinion of this date, we **MODIFY** paragraph 21(i) of the trial court's order to include the phrase "as defined above in paragraph 3" immediately following "NCA's confidential information."

We **REVERSE** paragraph 21(ii) and (iii) of the trial court's order and **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

In all other respects, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellants Crystal McCaskill and Suntronic Dallas LLC recover their costs of this appeal from appellee National Circuit Assembly d/b/a NCA.

Judgment entered this 28th day of June, 2018.